Commonwealth, Appellant, *v.* Allen.

Argued November 12, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

158

Before

STRANAHAN, P. J.

*Robert F. Banks,* First Assistant District Attorney, with him *Joseph J. Nelson,* District Attorney, for Commonwealth, appellant.

*William J. Rundorff,* First Assistant Public Defender, with him *John J. Regule,* Public Defender, for appellee.

OPINION BY CERCONE, J., April 3, 1974:

This appeal by the Commonwealth arises from the granting of an order in arrest of judgment by the trial court after the jury had returned a verdict of guilty for receiving stolen goods and conspiracy. The question raised by this appeal is whether the Commonwealth marshalled sufficient evidence to sustain the verdict of guilty by the jury. In making this determination, we are to read the entire record and consider the facts, and all reasonable inferences arising therefrom, in the light most favorable to the Commonwealth: *Commonwealth v. Blevins,* 453 Pa. 481, 309 A. 2d 421 (1973). Furthermore, "[t]here is no requirement that either the jury or a Court must believe the accused. The sole requirement is that there be sufficient evidence to justify the jury's verdict. . . .": *Commonwealth v.*

*Phillips*, 372 Pa. 223, 227 (1953).[1] The facts of the instant case, under this required construction of the evidence, are as follows.

On the evening of November 10, 1971, Mr. Albert Taub's automobile was broken into while it was parked at Mr. Taub's place of employment. The thieves removed Mr. Taub's checkbook, vehicle registration and driver's license from the glove compartment and fled. The following day, around noontime, the appellee and two other men drove up to the drive-in teller's window at a branch office of Mr. Taub's bank. The car stopped in such a fashion that Allen, a passenger in the rear seat, rather than Carthorn, Allen's co-defendant and the driver of the car, was in a position to carry out the transaction with the teller. Allen then attempted to negotiate a check for $150 which was signed by Albert Taub, endorsed by Albert Taub, and made payable to Albert Taub. All these signatures were forged.

Bank policy required the teller to ascertain the status of the bank account of any stranger who wanted to cash a check for a substantial sum. This routine investigation disclosed that Mr. Taub had reported the checks as stolen. Upon discovering this, the teller jotted down the license plate number of the car and summoned the police.

---

[1] We refer especially to this point because the language of 19 P.S. §871, which directs the trial court to review the entire record upon a motion for arrest of judgment is sometimes misconstrued to mean that the judge review and weigh *exculpatory* evidence presented by the defense. As the Court stated in *Phillips*, supra, "This is basic error." The learned trial court indicates in its opinion that, in granting the motion in arrest of judgment, it considered certain uncontradicted, exculpatory testimony of the accused which placed the blame squarely on one suspect who had not been apprehended. This it should not have done. Most of this testimony was self-serving, of course, and the jury could choose to disbelieve it. The court should only weigh all the evidence when it is considering a motion for a new trial.

In the meantime it became obvious to the occupants of the car, who could observe the activities of the teller, that the check was not going to be honored, and they began to drive away. After they had only gone a short distance, the third occupant, later described as Kenneth Smith, jumped from the car and ran away. The appellee and Carthorn then drove to a nearby grocery store where they were apprehended by the police. An ensuing routine search of the car produced the checkbook from above the sun visor on the driver's side of the car. Both defendants expressed ignorance as to how it got there. They also failed to give a convincing explanation of why they left the scene of the crime, stating only that they thought it was a matter between the bank and "Smith."

The pivotal issue in determining the propriety of the order in arrest of judgment is whether under the circumstances of this case the jury could properly infer from Allen's possession of the stolen check and the identification cards belonging to Mr. Taub that he knew they were in fact stolen. We feel such an inference was valid in this case.

The question of whether certain inferences or presumptions may permissibly follow from any given set of proven facts has recently become a source of great controversy in both the federal courts and the appellate courts of this Commonwealth. In *Leary v. United States*, 395 U.S. 6 (1969), and *Turner v. United States*, 396 U.S. 398 (1970), the Supreme Court declared unconstitutional federal statutes which created the rebuttable presumption that the defendant knew marijuana or cocaine were smuggled into the country if he possessed that contraband.[2] In so doing the Su-

---

[2] Interestingly enough, the Supreme Court in *Turner* permitted the presumption to arise from the fact of possession of *heroin*, almost all of which is commonly known to be imported illegally.

preme Court further stated, as a principle of general application, that a criminal presumption is unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States,* 395 U.S. at 36.

Since then the courts of this Commonwealth have been grappling with the application of the principle laid down in *Leary* and *Turner* to the long-standing, common law rule that, in a trial for receiving stolen goods, an inference of the requisite guilty knowledge *may* be drawn from the fact that the defendant had the *recently* stolen goods in his possession. There seems to be an assumption among some members of the legal profession that a principle has emerged in Pennsylvania, despite the fact that it has never been agreed upon as controlling by a majority of the Supreme Court, that the mere fact of possession of recently stolen goods, standing alone, does not entitle the jury to infer that the defendant knew the goods to be stolen.[3] Of course, rigidly applied, any such principle could lead to the absurd result that a defendant could not be convicted for receiving stolen goods if the only evidence was his being found with the goods in his possession immediately after the theft. The federal courts, in referring to the bald statement of this proposition first announced in *Commonwealth v. Owens,* supra, note 3, have stated

_____

[3] *Comm. v. Owens,* 441 Pa. 318 (1970), held only that the verdict of guilty must be reversed upon the particular facts of that case, since no more than three justices could agree on any one rationale. Indeed, three justices would have affirmed the guilty verdict. The only other Supreme Court case which rejected the inference also failed to muster more than three votes for any one rationale. See *Comm. v. Henderson,* 451 Pa. 452 (1973). Other cases, while referring to the *Owens* principle have distinguished it from the facts of those particular cases. See *Comm. v. McFarland,* 452 Pa. 435 (1973) ; *Comm. v. Shaffer,* 447 Pa. 91 (1972) ; *Comm. v. Swiatkowski,* 446 Pa. 126 (1971).

that *Owens* applied standards more stringent than those required by either *Leary* or *Turner*, supra.[4] This belief was borne out most recently in *Barnes v. United States*, 412 U.S. 837, 93 S. Ct. 2357 (1973), where the Supreme Court upheld the constitutionality of a virtually identical, permissible inference which has been recognized as valid "for centuries."[5]

It is submitted, therefore, that the Supreme Court of Pennsylvania, rather than having outlawed this long-standing inference on constitutional grounds, has merely undertaken to establish certain criteria for determining whether the goods were, for the purpose of permitting the inference, *recently* stolen. As with the problem of "staleness," in the context of search warrants,[6] "recent" does not denote any precise or constant period of time when used in this context. Thus, as the Supreme Court has stated, "we look to the following criteria to determine if the inference is valid: the lapse of time between the crime and the discovery of the property; the type and kind of property; the amount and volume of the property; and the ease in which it

---

[4] See, e.g., *United States v. Hamilton*, 457 F. 2d 95 (3d Cir. 1972); *United States ex rel. Cook v. Cliff*, 341 F. Supp. 1038 (E.D. Pa. 1972).

[5] It may be suggested that the difference between the inference upheld in *Barnes* and the one employed in this Commonwealth is crucial in that the federal courts require *unexplained* possession of recently stolen goods. We feel this distinction is more apparent than real. As the Supreme Court stated in *Barnes*, "The jury is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference." *Id.* at 845, 93 S. Ct. at 2362, n. 9. Thus, even though the defendant offers a plausible explanation, as in the instant case, the question of credibility is still one for the jury, and their choice to disbelieve the explanation and accept the inference is not susceptible to reversal by arrest of judgment, so long as the inference, and other evidence, is sufficient to convince them beyond a reasonable doubt. See note 1, supra.

[6] See, e.g., Annot., 100 A.L.R. 2d 534 (1965).

may be assimilated into trade channels." *Commonwealth v. Shaffer*, 447 Pa. 91, 109 (1972). These criteria reflect the tacit conclusion that, in most cases, stolen goods will eventually move from channels of commerce primarily criminal to channels of commerce primarily legitimate; and, that one who comes into possession of those goods through non-criminal channels is *unlikely* to know that the goods were stolen. How soon the goods will reach legitimate commerce is largely a function of time and marketability—the very variables that the four criteria set forth in *Shaffer* are designed to determine. For example, while stolen cash may reach legitimate commerce almost immediately, a stolen masterpiece may not do so for decades, and the determination of whether an individual knows a particular item is stolen should reflect, inter alia, this kind of difference. The trial court, after considering the facts of the particular case in light of these criteria, thus determines whether the jury *may* consider the inference when deciding whether the defendant possessed the requisite guilty knowledge.

Application of those criteria which are relevant to the facts of the instant case reveals that the inference was eminently valid herein. The possession and the attempt to negotiate the checks occurred less than twenty-four hours after their theft. Furthermore, forged and blank checks and stolen identification do not move freely, and indeed have no currency in legitimate commerce. See *Commonwealth v. Swiatkowski*, 446 Pa. 126 (1971). Finally, all the rest of the stolen checks were found in the automobile thus undercutting any possibility that the appellee had come into possession of one check innocently. Thus, the conclusion that the inference of guilty knowledge was permissible under the facts of this case is virtually compelled. And, if the jury chose to disbelieve the explanation offered by the defendants, they could properly have returned

a verdict of guilty. However, since the order in arrest of judgment made consideration of the appellee's motion for a new trial unnecessary, we will remand so that the trial court may determine whether the appellee should be afforded a new trial.

Order in arrest of judgment is reversed, the case remanded for consideration of appellee's motion for a new trial.