394 A.2d 992
COMMONWEALTH of Pennsylvania, Appellant,

v.

Heasi B. H. SIIAMS, a/k/a Frank Small.

Superior Court of Pennsylvania.

Submitted Nov. 15, 1977.

Decided Nov. 17, 1978.

Charles W. Johns, Assistant District Attorney, and Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellant.

Robert Shapiro, Assistant Public Defender, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

This is an appeal by the Commonwealth from an Order of the trial court granting appellee's motion in arrest of judgment. The appellee was tried on November 17, 1976, before a judge, after waiving trial by jury, and was convicted of a charge of carrying a firearm without a license. Following trial, appellee's motion in arrest of judgment was granted on December 15, 1976.

In an appeal from the granting of a motion in arrest of judgment, the reviewing court must determine whether the evidence presented by the prosecution was sufficient to support the verdict. In reaching a determination, the appellate court must review the record and all facts contained therein, together with all reasonable inferences arising therefrom, in the light most favorable to the Commonwealth. *Commonwealth v. Allen,* 227 Pa.Super. 157, 324 A.2d 437 (1974). The same concepts apply whether the fact finder was a jury or a judge sitting without a jury. *Commonwealth v. Nelson,* 245 Pa.Super. 33, 369 A.2d 279 (1976). Acting under such principles, we find that the lower court erred in granting the motion in arrest of judgment in the instant case.

The appellant was found guilty of a violation of the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 6106, which provides, in pertinent part: "No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter." The lower court, in arresting judgment, found that there had not been proof that the gun found on the appellant was in "operable" condition. The correctness of that finding is the sole issue disputed by the parties to this appeal.

The lower court relied upon the decision in *Commonwealth v. Layton,* 452 Pa. 495, 307 A.2d 843 (1973), where the

Pennsylvania Supreme Court held that a person could not be convicted under a similar statute,[1] if the object owned, possessed or controlled by the accused was not capable of firing a shot, and if he did not have under his control the means to convert the object into one capable of firing a shot. In *Layton,* it was stipulated that the pistol possessed by the accused *could not have been fired* at the time of the arrest. There was no evidence offered as to how the pistol could have been made operable in that case. In *Layton,* the Supreme Court explained that even though the object was not operable, a conviction might be sustained if the possessor had under his control the means to convert the object into one capable of firing a shot. The Court went on to state that an *operable* firearm may be said to be under the control of the alleged actor even though it is " . . . a malfunctioning assembled firearm or a disassembled firearm" (452 Pa. at 499, 307 A.2d at 845) so long as the accused has under his control the means to convert the inoperable firearm into an operable firearm. The court stated that an "operable" status could be found if the weapon had a damaged part that was " . . . readily repairable" (452 Pa. at 499, 307 A.2d 843).

Our review of the record in the instant case, with all reasonable inferences being considered in the light most favorable to the Commonwealth, leads us to the conclusion that there was sufficient evidence to show that the firearm was capable of firing a shot by means within the control of the appellee. The testimony supporting this conclusion was adduced when a weapons expert for the Allegheny County Crimes Laboratory testified. While this expert stated that the derringer-type pistol taken from the appellee was "inoperable", he also explained what he meant by his use of that

1. The conviction in *Layton* was under Section (d) of the Uniform Firearms Act. Act of June 24, 1939, P.L. 872, § 628(d) as amended, 18 P.S. 4628(d) (now 18 Pa.C.S. § 6105), which prohibits one previously convicted of a crime of violence from owning, possessing or controlling a firearm. A comparison between that section and § 6106 reveals no distinction between the two as to the definition of "firearm". Thus, we find the *Layton* holding applicable to § 6106 as well as § 6105.

term and also explained how he easily made what he called a "repair" so that the pistol would shoot a bullet. Thus, the expert, testified:

"Okay. To make the repair, there is a pin called the barrel pivot pin. That has to hold onto a plate which also holds onto the grips. It's called a grip plate. If this plate is not in line with the barrel pivot pin, then, when one pulls the trigger, the breech face moves away from the firing pin. Now, when the hammer falls, it does not hit the rounds hard enough to discharge. To discharge the weapon, the plate has to rest against the barrel pivot pin in a correct position, and it has to be held onto the barrel pivot pin tightly. So what I did is I grabbed a pair of pliers and held onto the plate, so that there was a good contact between the pivot pin and the plate, and then test fired the weapon."

Further questions and answers by the prosecuting attorney and the firearms expert were as follows:

Q In your testimony, then, with respect to your repair of this gun, you did not have to supply any parts to make this gun operable; is that right?

A That is correct.

Q Did you have to alter any parts as the gun was submitted to you?

A Not alter the parts, just to apply pressure against the barrel pin so that the barrel pin, barrel pivot pin holds tightly to the plate.

.    .    .    .    .

Q . . . would it be fair to say that when you say inoperable in this case, that you actually meant malfunctioning, or would that be any difference in the use of those terms in your field?

A It would be—well, there is a malfunction, in the fact that the barrel pivot pin is not held against these two side plates. It is inoperable because of that

Q Malfunction?

A Malfunction.

We hold that it was clearly possible for the trier of fact in this case, based upon the testimony quoted above, and the record as a whole, to infer and conclude that the weapon in the instant case was capable of firing a shot, by means available to the appellee and was not "inoperable" under the guidelines set forth in *Layton.*

The Order granting the appellee's motion in arrest of judgment is vacated and the verdict reinstated. The case is remanded to the trial court for sentencing.

SPAETH, J., files a dissenting opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

The statute forbids one to "carry a firearm." The majority acknowledges that this means an operable firearm. Of course we must read the record in the light most favorable to the Commonwealth, but that doesn't mean we read it to say what it doesn't say.

The expert said the firearm was inoperable. (N.T. 40). He then said he could render it operable by using pliers. (N.T. 35–36) (At one point he expressed the opinion that hand pressure would be sufficient, but he admitted he had not tried to fire the firearm using only hand pressure. (N.T. 43–45)) He also said that "someone who knows very little about guns" might not recognize that the firearm could be made operable by applying pressure to the barrel pin. (N.T. 40–41)

If you can make the firearm you are carrying fire only after squeezing it with pliers—assuming you know what is wrong with the firearm and know how to use pliers to fix it—the firearm is inoperable—unless perchance you are carrying not only the firearm but also the pliers, which the evidence here does not show.

The lower court was correct in granting the motion to arrest, and its order should be affirmed.