514 A.2d 921

**COMMONWEALTH of Pennsylvania**

v.

**James William BERTA, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 10, 1986.

Filed Sept. 2, 1986.

Bruce A. Barrett, Assistant Public Defender, Meadville, for appellant.

John M. Dawson, District Attorney, Meadville, for Com., appellee.

Before KELLY, MONTGOMERY and HESTER, JJ.

KELLY, Judge:

This is an appeal from the Court of Common Pleas of Crawford County, Pennsylvania, judgment of sentence of July 1, 1985, by the Honorable P. Richard Thomas, whereby defendant was sentenced to serve eight (8) to twenty-four (24) months imprisonment, to be computed from November 6, 1984, the date of appellant's original incarceration in the Crawford County Jail. Appellant, James William Berta, was found guilty under 18 Pa.C.S.A. §§ 6106 and 6118 of the Uniform Firearms Act for carrying, without a license, a replica of an antique revolver concealed upon his person.

In this case, appellant purchased the firearm in question as a kit at a local department store and subsequently assembled it into a replica of a cap and ball revolver common in the late nineteenth century. No permit was required for this over-the-counter purchase. In order to fire the gun, black powder, percussion caps, and lead balls were required as well as a working knowledge of its loading procedure. At the time he was cited for the alleged violation, the gun was not loaded, appellant was not in control of the materials necessary to fire the gun and there was no indication that he had ever purchased such materials. (N.T. 8).

We adopt the remaining findings of fact as ably set forth by the court below as follows:

> On November 6, 1984, Trooper Dan Lloyd of the Pennsylvania State Police was attempting to locate the Defendant while investigating an unrelated burglary matter. He found the Defendant at the residence of a friend. As the trooper entered the friend's residence[1] he saw the Defendant and saw the butt of what appeared to be a pistol

1. The transcript of the proceedings indicates that appellant was talking to a friend on a side porch of his friend's residence. (N.T. 6, 9).

protruding above the Defendant's belt line and partially concealed [2] by a coat the Defendant was wearing. The trooper promptly approached the Defendant, pulled the gun out of his belt line and subsequently filed charges of carrying an unlicensed weapon. At the nonjury trial the facts were not substantially in dispute and the Defendant testified in his own defense that he had purchased the gun in the form of an antique gun kit at the K–Mart Shopping Center the day before and had assembled the five (5) parts to form a working replica of an antique pistol popular in the 1800's. The Defendant's contention was that he had purchased it for a showpiece to hang on his wall.

(Trial court opinion at 2).

The issue before this Court is whether it was unlawful under the provisions of Sections 6106 and 6118 of the Uniform Firearms Act for appellant to possess in a concealed fashion an unloaded, unlicensed replica of an antique firearm.

Mr. Berta, appellant herein, argues that the lower court should not have concluded that the kit gun, being a replica of an antique revolver, was in violation of the Uniform Firearms Act where the revolver was not suitable for use. Appellant argues that because the antique replica in question was not loaded and appellant did not have within his possession at the time of his arrest the cap, balls or powder required to fire the weapon, that the replica firearm was not suitable for use and thus not in violation of the Uniform Firearms Act.

Moreover, appellant argues that under the caselaw of this Commonwealth he cannot be found guilty of violating Sec-

---

**2.** Trooper Lloyd testified that appellant possessed the gun in a concealed fashion by stating: "Upon approaching Mr. Berta, I noticed a butt of a weapon sticking out from underneath his coat." (N.T. 5). "When I approached him I saw the butt of the weapon sticking out and I reached in and took it." (N.T. 6). "It was stuck in his pants." (N.T. 7). Appellant endeavored to refute this testimony by claiming that the gun was not concealed. Upon making its determination that the testimony of Trooper Lloyd was more credible, the trial court conclued that the gun had in fact been concealed.

tions 6106 and 6118 of the Uniform Firearms Act, citing *Commonwealth v. Layton*, 452 Pa. 495, 307 A.2d 843 (1973) and *Commonwealth v. Siiams*, 260 Pa.Super. 409, 394 A.2d 992 (1978) in support of his contention. Appellant cites *Siiams* and *Layton* for the principle that the gun in question must be loaded and "capable of firing a shot" at the moment of the alleged violation in order to be considered "suitable for use" as the language of the Act mandates. We disagree with these contentions and affirm the decision of the lower court.

With respect to this appeal, one of the applicable sections of the Pennsylvania Uniform Firearms Act, as noted previously, is Section 6106 which reads substantially as follows:

(a) Offense defined—

No persons shall carry a firearm in any vehicle or concealed on or about his person except in his place of abode or fixed place of business without a license therefore as provided in this subchapter.

Initially, we find that Section 6106(a) describes those firearms which shall not be maintained without a license. "No persons shall carry a firearm in any vehicle or concealed on or about his person ... without a license ...", the exceptions to this principle being "except in his place of abode or fixed place of business ... as provided in this subchapter." We know that the facts of this case show that appellant was not in his place of abode or fixed place of business, but was located on the porch of a friend's residence. Consequently, none of the exceptions as listed in Section 6106(a) apply to this case. Second, Trooper Lloyd, who cited appellant for the instant violation, testified that the firearm was possessed in a concealed fashion as described in the lower court's opinion, *supra*. Third, neither party disputed the fact that the firearm was unlicensed. (N.T. 8, 10). The gun was concealed on his person, unlicensed and not found in his "place of abode" or "place of business". Hence, relying for the moment on the assumption that the gun involved can be characterized as a "firearm" as defined in the Uniform

Firearms Act, to be discussed *infra,* appellant was rightfully cited for violation of Section 6106.

To answer the question of whether the gun involved is a "firearm," we must analyze Sections 6102 and 6118. Section 6102 of the Act defines "firearm" as follows:

> Any pistol or revolver with a barrel less than 12 inches, any shotgun with a barrel less than 24 inches, or any rifle with a barrel less than 15 inches."

18 Pa.C.S.A. § 6102.

Trooper Lloyd's testimony at trial revealed that the barrel of the antique gun replica was approximately six inches, thus clearly within the twelve inch maximum stated in Section 6102. (N.T. 7). Section 6118 refers to replicas of antique firearms. This section reads in part:

> (a) General Rule.—This subchapter shall not apply to antique firearms.
>
> .  .  .  .  .  .  .
>
> (c) Definition.—For the purpose of this section "antique firearm" means:
>
> (1) any firearm, including any firearm with ... percussion cap or similar type of ignition system ... and (2) any replica of any firearm described in paragraph (1)...."

Thus, under the general rule, the firearm in question qualifies as a replica of such an antique firearm, and the Act would not apply in this case.

However, Section 6118(b) lists two exceptions which relate to Section 6106 and Section 6105, respectively. This section reads:

> (b) Exception.—Subsection (a) shall not apply to the extent that such antique firearms, reproductions or replicas of firearms are concealed weapons as provided in section 6106 (relating to firearms not to be carried without a license), nor shall it apply to the provisions of section 6105 (relating to former convict not to own a firearm, etc.) if such antique firearms, reproductions or replicas of firearms are suitable for use.

18 Pa.C.S.A. § 6118(b). The lower court opinion, by P. Richard Thomas, J., stated: "[t]he fact that the antique replica was not loaded is immaterial as section 6118 only mandates that the antique be 'suitable for use'. Testimony indicated that with proper cap, powder and ball, the replica could be put into operable use." (Op. p. 4). Although the lower court properly applied the suitable for use test in finding a violation under the Act, such standard is not derived from the language of Section 6118, *per se*, but is a standard of operability which is inherent in every issue regarding a violation under Section 6106. Nevertheless, we find that the exception set forth in Section 6118(b) as it relates to Section 6106 does apply to this case. Consequently, appellant was properly found to be in violation of Sections 6106 and 6118 of the Act.

In *Commonwealth v. Jennings*, 285 Pa.Super. 295, 304, 427 A.2d 231, 235 (1981) the court said:

"[a] reasonable fact finder may ... infer operability [which is also an essential element to be proven in establishing violations of Sections 6105 and 6106,] from an object which looks like, feels like, sounds like or is like a firearm ... without direct proof of operability," *Commonwealth v. Layton*, 452 Pa. 495, 498, 307 A.2d 843, 844 (1973).

The operability of a firearm is synonymous to its suitability for use. Here, though unloaded, the gun was mechanically operable and capable of firing a shot. It cannot be said that the gun in question was incapable of firing a shot, whether loaded or unloaded, merely because a shot was not fired or because ammunition was not found in the appellant's possession at the time of his arrest. Moreover, it would be absurd to find that the intent of the legislature was to apply this Act only to those firearms which were discovered loaded as opposed to any firearm within the given definition that could be deemed a potential threat. When interpreting a statute, "[w]e are guided by the presumption that the legislature did not intend a result that is absurd, unreasonable or impossible of execution." *Commonwealth v. Stewart*, 343 Pa.Super. 514, 495 A.2d

584 (1985), *citing Commonwealth v. Bigelow,* 484 Pa. 476, 482, 399 A.2d 392, 394 (1979). Thus, we conclude that the gun found in appellant's possession was an operable firearm within the meaning of the Act. In defining firearm within the bounds of the Uniform Firearms Act, "suitable for use" applies to operability in general and not to operability of the moment. The instant ability to use a firearm is not the key to determining a weapon's life-threatening capability. One who is a victim of a violator of the Act can hardly avail himself or herself of the opportunity in such a situation to ponder whether in fact the gun at that moment is capable of firing a shot.

This Court, in *Siiams, supra,* defined the terms "firearm" and "operable status" in order to provide a broader picture of applicability of the Act. It was determined that, even without a finding of operability, appellant had within his control the means to convert the object into one capable of firing a shot. Thus, appellant was found guilty of violating 18 Pa.C.S.A. Section 6106. The sole issue disputed on appeal in *Siiams* was whether the lower court was correct in finding the Commonwealth failed to prove that the gun found on appellant was in "operable" condition. The alleged inoperability was due to a mechanical defect in the gun itself. On appeal, this court found that sufficient evidence did in fact exist to prove operability and vacated the lower court order. In making its determination, the majority of the court, relying on *Layton, supra,* found that though the firearm máy have been "inoperable [for the moment]", it was still capable of firing a shot by means within the control of the appellant.

*Layton* set out a standard of operability and the rationale for the statutory definition of "firearm". The Court stated, "[I]f it can reasonably be concluded that the actor owned, possessed or controlled an operable firearm, there is a risk of violence by the firing of a shot which was the result sought to be avoided...." *Layton,* 452 Pa. at 499, 307 A.2d at 845. It was clear in *Layton* that operability of the firearm was a determining factor in finding a violation of Section 6105 of the Act. By footnote, *Siiams* found the holding

in *Layton* applicable to Section 6106 as well as Section 6105. *Siiams*, 260 Pa.Superior Ct. at 412, 394 A.2d at 994. Thus appellant's reliance on *Layton* and *Siiams* is misplaced, since operability of the firearm, as it has been defined, does apply to Section 6106 and thus to Section 6118.

In any criminal prosecution, the Commonwealth has an unshifting burden, to prove beyond a reasonable doubt all elements of a crime. *Commonwealth v. Cropper*, 463 Pa. 529, 535, 345 A.2d 645, 648 (1975). A review of the instant facts reveals that the aforesaid elements were proved beyond a reasonable doubt. The lower court was correct in holding that, at the time of being cited for violation of the Act, an antique firearm replica need only be found suitable for use, or "operable" rather than necessarily loaded.

We therefore affirm the lower court in finding appellant guilty of violations under the above-mentioned sections of the Uniform Firearms Act.

HESTER, J., joins this opinion and files a concurring opinion.

HESTER, Judge, concurring:

I join in the scholarly opinion by Judge Kelly, but write separately because I believe appellant did not carry a concealed weapon and that his conviction was therefore erroneous. Although appellant's counsel raised this issue in post-trial motions and the trial court addressed the issue in its opinion, counsel inexplicably abandoned the issue of concealment on appeal. We cannot properly treat the issue on its merits, for it has been waived. Pa.R.A.P. 2116(a), 2119(a); *Commonwealth v. Balch*, 328 Pa.Super. 71, 76, 476 A.2d 458, 461 (1984); *Rago v. Nace*, 313 Pa.Super. 575, 578, 460 A.2d 337, 339 (1983); *Commonwealth v. Sanford*, 299 Pa.Super. 64, 67, 445 A.2d 149, 150–51 (1982); *Commonwealth v. Harper*, 292 Pa.Super. 192, 196 n. 3, 436 A.2d 1217, 1219 n. 3 (1981).

Nevertheless, the issue is of substantial importance to appellant, and I believe the trial court erred in its treatment of the issue involving the concealment of the weapon.

The trial court correctly cited *Commonwealth v. Butler,* 189 Pa.Super. 399, 403, 150 A.2d 172, 173 (1959), for the proposition that the "issue of concealment depends on the particular circumstances present in each case and is a question for the trier of fact to resolve in reaching a decision." Slip op., 10/8/85, at 2. The court, however, characterized the issue as one of credibility when, in fact, there was no conflict in the testimony.

*Butler* and a line of cases following it hold that *when there is conflicting evidence,* concealment is a question for the fact-finder. *Commonwealth v. Butler, supra,* 189 Pa. Superior Ct. at 403, 150 A.2d at 173 (Butler had attempted to conceal the gun from police officers by passing it to his wife); *Commonwealth v. Nickol,* 476 Pa. 75, 81, 381 A.2d 873, 876–77 (1977) (evidence from which trier of fact could infer that Nickol concealed gun prior to robbery); *Commonwealth v. Pressley,* 433 Pa. 163, 166, 249 A.2d 345, 346 (1969) (evidence from which fact-finder could infer that Pressley had removed the gun from under his sweater); *Commonwealth v. Horshaw,* 237 Pa.Super. 76, 80, 346 A.2d 340, 342–43 (1975) (robbery victim testified that Horshaw pulled gun from his abdomen and victim first saw it when it was coming up by Horshaw's side); *Commonwealth v. Harris,* 195 Pa.Super. 606, 608–09, 171 A.2d 850, 851 (1961) (testimony very much in conflict but Harris seen drawing gun from his jacket by one witness and seen drawing some object from his pocket by others).

When, however, there is no conflict in the evidence, there is no issue of credibility to be resolved by the trier of fact. I believe this case is indistinguishable from *Commonwealth v. Williams,* 237 Pa.Super. 91, 346 A.2d 308 (1975), *overruled on other grounds, Commonwealth v. Foster,* 250 Pa.Super. 32, 34 n. 3, 378 A.2d 438, 439 n. 3 (1977). Williams was seen in the City of Philadelphia firing a handgun at a passing automobile, walking to the corner, spinning the gun and tossing it from hand to hand. Then, Williams "stuck the gun in his belt, turned around and walked away." *Id.,* 237 Pa.Superior Ct. at 93, 346 A.2d at 309. Following Williams' conviction of carrying a concealed

weapon, this court reversed, stating: "In the instant case there is no evidence whatsoever as to any attempt by appellant to conceal any weapon; and, therefore, we must conclude that the evidence was insufficient to sustain appellant's conviction as to Section 6106." *Id.*, 237 Pa.Superior Ct. at 95, 346 A.2d at 310. As in *Williams*, there is no evidence in this case that appellant attempted to conceal his weapon.

Although appellant failed to argue this issue, the Commonwealth did address it. The Commonwealth states that appellant's

> explanation that he intended to place the gun on a wall would have merit if it were not for the way in which he was carrying the gun in the meantime. People just don't walk around with guns stuck in their pants, having the gun butt sticking out just enough *so that others will realize that he is armed* if the real intention is to place the gun on a wall.

Brief for appellee at 3 (emphasis added).

Accordingly, had the issue been argued on appeal, I would have reversed the conviction and discharged appellant. As it was not argued, I am constrained to join Judge Kelly's opinion which correctly addresses the other arguments of appellant.