COMMONWEALTH of Pennsylvania,
Appellant

v.

Sue ZORTMAN, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 18, 2008.
Filed July 20, 2009.
Reargument Denied Sept. 22, 2009.

Kelley L. Nelson, Office of Atty. Gen., Harrisburg, for the Com., appellant.

Fredrick M. Neiswender, Clearfield, for appellee.

BEFORE: BOWES, FREEDBERG and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 The Commonwealth appeals the sentencing court's refusal to apply the mandatory minimum sentencing provision of 42 Pa.C.S. § 9712.1. We vacate the judgment of sentence and remand for sentencing in accordance with that statute.

¶ 2 On November 20, 2006, Appellee was charged with possession of a controlled substance, possession of a controlled substance with intent to deliver, possession of drug paraphernalia, and conspiracy. Appellee lived with Robert Prisk at 313 Marron Road, Curwensville, Clearfield County. Prisk became the target of a drug investigation by the Pennsylvania Attorney General's Office. After Prisk was arrested, police conducted a consensual search of Appellee's residence. Marijuana was discovered in the kitchen and in a briefcase, and there was a firearm located under the bed in a bedroom.

¶ 3 The Commonwealth successfully moved to consolidate Appellee's case with that of Prisk and other members of his drug enterprise, including Charles Bloom, David Bressler, Amos Brimmer, Peter Miele, and Allen Sheen. Appellee then filed a motion to sever. She averred that while her co-defendants' drug-related activities began in 2000, she did not know any of the named individuals prior to 2004, and therefore, substantial evidence of drug transactions occurring prior to 2004 that was inadmissible against her would be admitted at a joint trial. The trial court thereafter granted Appellee's motion to sever.

¶ 4 On December 27, 2007, Appellee tendered an open guilty plea to all the charges, acknowledging that she faced a maximum term of imprisonment of twelve years, and the case immediately proceeded to sentencing. The deputy attorney general then invoked application of the mandatory minimum sentencing provision contained in 42 Pa.C.S. § 9712.1, which applies when a defendant is convicted of possession with intent to deliver and a gun is found in close proximity to the drugs. The applicability of that section was "reflected in the pre-sentence investigation report." N.T. Guilty Plea, 12/27/07, at 9. The deputy attorney general indicated that the statute applied "based upon the testimony of [Appellee] at the time of [Prisk's] trial." *Id.*

¶ 5 The prosecutor continued by summarizing Appellee's testimony at that trial, and Appellee failed to lodge any objection. Specifically, the deputy attorney general stated that at Prisk's trial, Appellee "indicated that she received the firearm, the handgun, and that it was her marijuana that was in the residence when a search was done by the Attorney General's office at the Robert Prisk case." *Id.* The prosecutor said that Appellee also made statements to the officers searching her home

that "the marijuana was indeed hers" and that there was a gun on the premises. *Id.*

¶ 6 Appellee did not refute this recitation of the pertinent facts and actually acknowledged that when the state police entered the residence, she answered the door and showed the police "where the marijuana was located." *Id.* at 10. Appellee also represented to the sentencing court that the "gun, at that time, was under the mattress" in a bedroom. *Id.* Appellee argued that section 9712.1 did not apply because the gun was not "on her person or within her reach." *Id.* at 10.

¶ 7 The sentencing court rejected Appellee's position and sentenced her to five to ten years imprisonment under § 9712.1. Appellee filed a post-sentence motion for reconsideration, and the court conducted a hearing on that motion on January 31, 2008. At that hearing, Appellee argued that the mandatory minimum did not apply for two different reasons. Utilizing the correct statutory language, Appellee first asserted that the gun was not in close proximity to the drugs because the drugs were in the kitchen and the gun was underneath the bed. N.T. Post–Sentence Motion Hearing, 1/31/08, at 7. Second, Appellee noted that the gun was inoperable because there was no firing pin in the firearm. *Id.* at 3. She continued that "due to the fact that the firearm was inoperable, that the mandatory minimum should not apply." *Id.* at 3–4.

¶ 8 The deputy attorney general refuted the position that the statute in question required the firearm to be functional and also argued that the gun was in close proximity to the drugs. The prosecutor noted that Appellee led police to the kitchen and showed them drugs, took them to another room and gave them a briefcase containing drugs, and then showed them the firearm in the bedroom. At that hearing, again without objection, the deputy

attorney general repeated that Appellee "did indicate that those drugs were hers, that the firearm was hers." *Id.* at 7.

■ ¶ 9 Following the post-sentence motion hearing, the sentencing court vacated the term of imprisonment it originally had imposed and gave Appellee a probationary term for the offenses in question. In its opinion in support of its January 31, 2008 sentence, the court indicated that it did not apply section 9712.1 because the firearm seized in Appellee's residence was not functional due to the absence of a firing pin. The trial court thus concluded that it did not constitute a "firearm" as envisioned by section 9712.1. The Commonwealth filed this timely appeal, wherein it challenges the sentencing court's refusal to apply section 9712.1.

> Generally, a challenge to the application of a mandatory minimum sentence is a non-waiveable challenge to the legality of the sentence. *Commonwealth v. Leverette,* 911 A.2d 998, 1002 (Pa.Super.2006). Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. *Commonwealth v. Ausberry,* 891 A.2d 752, 754 (Pa.Super.2006). Our standard of review over such questions is *de novo* and our scope of review is plenary. *See Leverette,* 911 A.2d at 1002.

*Commonwealth v. Diamond,* 945 A.2d 252, 256 (Pa.Super.2008).

¶ 10 In this case, the Commonwealth sought application of the mandatory sentencing provision at 42 Pa.C.S. § 9712.1, which provides (emphases added):

> (a) **Mandatory sentence.—Any person who is convicted of a violation of section 13(a)(30) of** the act of April 14, 1972 (P.L. 233, No. 64), [35 P.S. § 780–113] known as **The Controlled Substance, Drug, Device and Cosmetic**

**Act, when at the time of the offense** the person or the person's accomplice is in physical possession or control of **a firearm,** whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or **in close proximity to the controlled substance,** shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

¶ 11 Section 9712.1(f) refers us to 42 Pa.C.S. § 9712 for the definition of firearm. 42 Pa.C.S. § 9712.1(f) ("As used in this section, the term 'firearm' shall have the same meaning as that given to it in section 9712 (relating to sentences for offenses committed with firearms.)"). Section 9712(e) defines a "firearm" as, "Any weapon, including a starter gun, which **will or is designed to or may readily be converted to** expel a projectile by the action of an explosive or the expansion of gas therein." 42 Pa.C.S. § 9712(e) (emphasis added).

¶ 12 In this case, the sentencing court concluded that the handgun did not meet the definition of firearm under § 9712.1 for these reasons:

The firearm for which the Defendant was deemed in physical control of had a missing firing pin, which is a vital component of the weapon. Without the firing pin the bullet could not be projected. Without the firing pin the firearm is incapable of discharging a bullet. Without the firing pin the gun was completely defective. The defectiveness of the gun was so absolute that it was no longer functional within the nature of its original design. The firearm was so, ... "defective or damaged that it had lost its initial characteristics as a firearm." *Commonwealth v. Layton*, 452 Pa. 495, 307 A.2d 843 (1973). The Defendant's firearm was not readily repairable as the missing firing pin was not located on Defendant's person or within the residence. The Defendant's weapon could no longer be characterized as a "firearm" as defined by § 9712(e). Hence, this Court was correct in dismissing the application of § 9712.1 to the Defendant's sentence.

¶ 13 Trial Court Opinion, 7/16/08, at 3. The court also compared 42 Pa.C.S. § 9712(a) to 42 Pa.C.S. § 9712.1. Section 9712(a) imposes a mandatory minimum sentence on a person convicted of a crime of violence, as defined in § 9714, if during the commission of the crime the person visibly possessed a firearm "whether or not the firearm. ... was ... functional" if the victim was placed in reasonable fear of death or serious bodily injury. The sentencing court extrapolated that since § 9712(a) was designed to punish a defendant for placing a victim in fear of death by using a weapon, whether or not functional, that section's indication that a firearm does not need to be operable could not be imported for purposes of application of § 9712.1. It reasoned, "The legislature clearly expresses an intent to apply § 9712 where a firearm is not functional because the inoperable firearm is still capable of putting a victim of a violent crime in fear of harm or death but the legislature did not extend such a provision to § 9712.1, where the language is absent. Hence, § 9712.1 mandatory is not applicable because the Defendant's firearm is inoperable." Trial Court Opinion, 7/16/08, at 4.

¶ 14 The case upon which the sentencing court relied, *Commonwealth v. Layton*, 452 Pa. 495, 307 A.2d 843 (1973), examined whether a nonfunctional pistol was a firearm for purposes of the Uniform Firearms Act ("the Act"). In that case, the defendant was convicted under the following section of the Act, "No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own

a firearm, or have one in his possession or under his control." 18 P.S. § 4628(a) (repealed and now codified at 18 Pa.C.S. § 6105). At the time of *Layton*, the Act defined a firearm as "any pistol or revolver with a barrel less than twelve inches, any shotgun with a barrel less than twenty-four inches or any rifle with a barrel less than fifteen inches." 18 P.S. § 4628(a) (repealed). The Supreme Court in *Layton* held that since the Act "was obviously intended to cover only objects which could cause violence by firing a shot," a defendant could not be convicted under the Act unless the weapon he possessed was capable of firing a projectile.

¶ 15 We conclude that *Layton* was improperly applied herein. When *Layton* was decided, a firearm under the Act was defined to include a pistol, revolver, shotgun, or rifle with a specified barrel length.[1] The Act did not discuss whether a nonfunctional revolver or pistol could still be a firearm, and the Supreme Court had to determine, based upon the legislative intent behind enactment of the Act, whether the legislature meant a nonfunctional pistol or revolver to fall within the definition of firearm for purposes of the Act. Naturally, *Layton* has consistently been applied by this Court since its dissemination in 1973. *See e.g. Commonwealth v. Stevenson*, 894 A.2d 759 (Pa.Super.2006); *Commonwealth v. Berta*, 356 Pa.Super. 403, 514 A.2d 921 (1986); *Commonwealth v. Siiams*, 260 Pa.Super. 409, 394 A.2d 992 (1978).

¶ 16 However, in this case, we are not examining the definition of firearm under the Act but the definition of firearm contained in § 9712(e). Those two definitions are not identical. Indeed, the language contained in § 9712(e) bears no resemblance to that interpreted by the *Layton* Court. In the present case, we are guided by unambiguous language that specifically excludes any requirement of operability. Section 9712.1 states that the meaning of firearm for purposes of its application is contained in § 9712. Under § 9712(e), a firearm includes any weapon "designed" to expel a projectile by explosive means. The language is clear and free from doubt, and the weapon in question, which was a handgun that was designed to fire bullets, falls within its parameters. *Commonwealth v. Little*, 903 A.2d 1269, 1272 (Pa.Super.2006) ("courts are duty bound to apply all laws passed by the legislature pursuant to their plain language"); 1 Pa. C.S. § 1903(a).

¶ 17 Our conclusion is reinforced by the use of the disjunctive in the statute. When we construe a statute, we must presume that all the words used in the statute were intended to be "effective and certain." 1 Pa.C.S. § 1922(2); *Commonwealth v. Campbell*, 758 A.2d 1231 (Pa.Super.2000). In addition, even though mandatory minimum sentencing provisions, as penal statutes, are to be strictly construed, all terms of such provisions must be given their intended effect and are not required to be interpreted in accordance with their narrowest meaning. *Campbell, supra*. Under § 9712, a firearm is "[a]ny weapon" that "will **or** is designed to **or** may readily be converted to" fire a bullet. In order for the term "is designed to" to have any effect or meaning, "firearm" must be construed to include any weapon that is currently functional because it "will" fire a bullet as well as one that was

---

1. Significantly, the definition of firearm under section 6105 of the Act was altered in 1995. Act 1995–66 (S.B. 282), approved Nov. 22, 1995. The Act now defines a firearm as follows: "the term 'firearm' shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105.

actually "designed to" function even though not currently capable of firing a projectile as well as one that can be "readily converted" so as to be functional.

¶ 18 Thus, it is irrelevant that the weapon in question did not have a firing pin and was no longer capable of actually firing a bullet; the record establishes that it was a gun that had been designed to shoot bullets. It thereby fell within the definition of firearm under § 9712(e) and thus, § 9712.1. We will not import a requirement of operability by relying upon *Layton*. As noted, *Layton* interpreted another definition of firearm that was ultimately altered in 1995. That Court resorted to guidance from the legislative intent behind the statute to interpret its meaning. *Commonwealth v. Reaser*, 851 A.2d 144, 149 (Pa.Super.2004) (quoting *In re Canvass of Absentee Ballots of November 4, 2003 General Election*, 577 Pa. 231, 843 A.2d 1223, 1230 (2004) ("Under 1 Pa.C.S.A. Section 1921(c), it is only when the words of a statute 'are not explicit' that a court may resort to other considerations, such as the statute's perceived 'purpose,' in order to ascertain legislative intent.")).

¶ 19 Section 9712.1(d), Authority of court in sentencing, provides, "There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to place such offender on probation or to suspend sentence." 42 Pa.C.S. § 9712.1. When the Commonwealth has established the necessary factual predicate for application of a mandatory minimum sentence, the sentencing court cannot refuse to impose the mandatory minimum. *Commonwealth v. Diamond, supra;* 204 Pa.Code § 303.9(h) ("the court has no authority to impose a sentence less than that required by a mandatory minimum provision established in statute"). Herein, the Commonwealth established

that Appellee's residence contained a gun designed to fire bullets, a weapon that would have been functional if not for a missing firing pin, and thus, it was a firearm as defined in § 9712(e). The mandatory minimum, which is designed to be a deterrent for drug dealers who are using firearms, *Commonwealth v. Sanes,* 955 A.2d 369 (Pa.Super.2008), applied to this case.

¶ 20 Appellee suggests that since the notes of testimony from the Prisk trial were not incorporated into the record herein, they cannot be considered. However, those transcripts are unnecessary for this Court to ascertain whether the mandatory minimum applies herein. The facts supporting application of that statute are contained in the notes of testimony of Appellee's guilty plea/sentencing proceeding as well as the hearing on Appellee's post-sentencing motions; both of those transcripts are contained in the certified record.

¶ 21 We repeat that Appellee neither contested nor objected to the Commonwealth's recitation of the facts necessary to invoke § 9712.1. The prosecutor said that Appellee testified at Prisk's trial that the drugs and gun found at their joint residence were hers and that she also made those same admissions to police while they were conducting the search of her residence. During her counter arguments, Appellee conceded the veracity of this information. Indeed, Appellee proved the key fact on appeal through the same method—argumentation to the court. Appellee established that the gun was missing a firing pin through counsel's representations to the court during the hearing on her post-sentence motion. The Commonwealth assented to this depiction of her salient fact, just as Appellee assented to those of the Commonwealth. The parties thereby allowed the court to determine the

applicability of § 9712.1 based on what essentially were stipulated facts.

¶ 22 Appellee also maintains that the firearm was not found "in close proximity" to the drugs, and therefore, the sentencing court's refusal to apply § 9712.1 is not infirm. A recent pronouncement from this Court is instructive. In *Sanes, supra,* we interpreted the meaning of "in close proximity" for purposes of application of § 9712.1. We gave that term an expansive meaning and held that a handgun found hidden in a closet was in close proximity to drugs located in the same room.

¶ 23 We applied Pennsylvania decisions determining the meaning of the term "in close proximity" in another statutory provision, the Forfeiture Act, 42 Pa.C.S. § 6801. At § 6801(a)(6)(ii), the Forfeiture Act states that where money or negotiable instruments are found "in close proximity" to illegally-possessed drugs, there is a rebuttable presumption that those items were the proceeds of unlawful drug sales and thus, subject to forfeiture. In *Commonwealth v. Giffin,* 407 Pa.Super. 15, 595 A.2d 101, 104 (1991), we concluded that cash located in the same residence was in close proximity to drugs found in another portion of the residence for purposes of the Forfeiture Act's presumption.

¶ 24 As noted, § 9712.1 is designed to deter drug dealers who utilize weapons. Appellee was involved in a significant drug distribution scheme. When the search was conducted, there were drugs in the kitchen as well as in a briefcase located in another room of the residence. We conclude that the gun found in the bedroom was in close proximity to the drugs in question within the meaning of § 9712.1.

¶ 25 Finally, Appellee claims that she was not given reasonable notice that the Commonwealth intended to apply the mandatory minimum in question. Section 9712.1(c) states, "Provisions of this section shall not be an element of the crime, and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing." The plea colloquy indicates that the presentence report contained notice of the applicability of § 9712.1. Furthermore, there was no objection to the adequacy of notice at the guilty plea/sentencing proceeding. Indeed, Appellee was prepared for and contested the Commonwealth's invocation of the mandatory minimum. Finally, to the extent any violation of notice provisions occurred, it was cured when the sentencing court afforded a second hearing on this issue, and Appellee had the opportunity to present additional evidence and argument in support of her positions.

¶ 26 Judgment of sentence vacated. Case remanded for proceedings consistent with this adjudication. Jurisdiction relinquished.

¶ 27 Judge POPOVICH files a Dissenting Opinion.

DISSENTING OPINION BY POPOVICH, J.;

¶ 1 I dissent to the Majority's vacation of the judgment of sentence and remanding of this case for the trial court to impose the mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9712.1 upon Appellee, Sue Zortman.

¶ 2 Appellee does not dispute the fact that the apartment she occupied with a co-defendant (Robert Prisk) contained marijuana in the kitchen and in a briefcase, and that there was a firearm in a bedroom, all of which were seized by police while executing a consensual search of Appellee's residence. Appellee pleaded guilty to pos-

session of a controlled substance, possession of a controlled substance with intent to deliver (PWID), possession of drug paraphernalia, and conspiracy, which exposed her to a maximum term of imprisonment of twelve years. At sentencing, the Commonwealth invoked the mandatory minimum punishment required by § 9712.1 because Appellee violated Section 13(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act (hereinafter "Drug Act") and a gun was discovered in close proximity to the drugs.

¶ 3 At the court below, Appellee did not dispute the facts associated with the presence of a gun in the apartment she shared with Prisk. Rather, Appellee acknowledged its presence but argued the inapplicability of the mandatory nature of § 9712.1 because of the inoperability of the gun found in the apartment. In a motion for re-consideration, the trial court agreed with Appellee for the following reasons; to-wit:

> The firearm for which [Appellant] was deemed in physical control of had a missing firing pin, which is a vital component of the weapon. Without the firing pin the bullet could not be projected. Without the firing pin the firearm is incapable of discharging a bullet. Without the firing pin the gun was completely defective. The defectiveness of the gun was so absolute that it was no longer functional within the nature of its original design. The firearm was so [...] "defective or damaged that it had lost its initial characteristics as a firearm." [Appellant's] firearm was not readily repairable as the missing firing pin was not located on [Appellant's] person or within the residence. [Appellant's] weapon could no longer be characterized as a "firearm" as defined by § 9712(e). Hence, th[e trial c]ourt was correct in dismissing the application of § 9712.1 to [Appellant's] sentence.

Trial court opinion, 7/16/08, at 3 (citation omitted). Additionally, the trial court analogized 42 Pa.C.S.A. § 9712(a) (where Legislature expressed intent to permit punishment of defendant in possession of firearm, even if not functional, because weapon still capable of placing victim in fear of harm or death) with Section 9712.1, which contains no such express language relating to punishment regardless of the operability of a handgun. The trial court viewed the facts against the backdrop of the preceding statutes and case law in deciding not to impose a mandatory minimum sentence upon Appellee because the gun found in her apartment was missing the firing pin. The Majority concludes otherwise because Section 9712.1 "specifically excludes any requirement of operability. [...] Under § 9712(e), a firearm includes any weapon 'designed' to expel a projectile by explosive means. The language is clear and free from doubt, and the weapon in question, which was a handgun that was designed to fire bullets, falls within its parameters." Majority Opinion, at 242 (citation omitted). I disagree with the rationale espoused by the Majority, which resorts to an expansive reading of a criminal statute to enhance the severity of Appellee's sentence because of her proximity to an "inoperable" firearm found in the bedroom of an apartment she shared with a co-defendant. Thus, the question posed for our review requires us to interpret the term "firearm" within § 9712.1.

In interpreting a statute, we must ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. § 1921(a). When statutory language is clear and free from all ambiguity, it generally furnishes the best indication of legislative intent; we must not disregard the statutory language under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Bowser v. Blom,* 569 Pa. 609,

807 A.2d 830, 835 (2002). Accordingly, a reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(b); *O'Rourke v. Commonwealth, Dep't of Corrs.*, 566 Pa. 161, 778 A.2d 1194, 1201 (2001). Finally, while minding our other principles of statutory construction, we must construe all penal provisions strictly in favor of defendants' liberty interests. 1 Pa.C.S. § 1928(b)(1); *cf. Commonwealth v. Wooten*, 519 Pa. 45, 545 A.2d 876, 879 (1988) ("[W]here an ambiguity exists in the language employed by the legislature in a penal statute, it should be interpreted in a light most favorable to the criminally accused."). *But see id.* at 880 ("While strict construction of penal statute is required, however, courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent.").

Section 9712.1, "Sentences for certain drug offenses committed with firearms[,]" provides, as herein relevant:

(a) **MANDATORY SENTENCE.**—Any person who is convicted of a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person [...] is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's [...] reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

\* \* \* \*

(d) **AUTHORITY OF COURT IN SENTENCING.**—There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to place such offender on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.

\* \* \* \*

(f) **DEFINITION.**—As used in this section, the term "firearm" shall have the same meaning as that given to it in section 9712 (relating to sentences for offenses committed with firearms).

42 Pa.C.S.A. § 9712.1. Section 9712, from which § 9712.1 draws its definition of "firearm," defines a firearm as: "[a]ny weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein." 42 Pa.C.S.A. § 9712(e). As noted earlier, the Majority concludes that the language contained in § 9712(e) is "clear and free from doubt." I disagree.

¶ 4 It is beyond cavil that "our principles of statutory construction require us to look no farther than the provision in question when its language is unambiguous, 1 Pa. C.S.A. § 1922(b), but here the provision in question cross-references another section for definitional purposes, which complicates the inquiry." *Commonwealth v. Dickson*, 591 Pa. 364, 375, 918 A.2d 95, 102 (2007).

¶ 5 We begin by reviewing the Pennsylvania Supreme Court decision from which Appellant, the Commonwealth, and the trial court cite in support of their respective positions concerning the "operability" of the firearm and its impact upon application of the mandatory minimum sentence called

for under § 9712.1. In *Commonwealth v. Layton,* 452 Pa. 495, 307 A.2d 843 (1973), the defendant was convicted under the following section of the Uniform Firearms Act:

> No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control.

18 Pa.C.S.A. § 6105.[1] The high Court held that a person could not be convicted under the statute, if the object owned, possessed, or controlled by the accused was not capable of firing a shot, and if he did not have under his control the means to convert the object into one capable of firing a shot. In *Layton,* it was stipulated that the pistol possessed by the accused could not have been fired at the time of the arrest. There was no evidence offered as to how the pistol could have been made operable in that case. Further, the Supreme Court explained that even though the object was not operable, a conviction might be sustained if the possessor had under his control the means to convert the object into one capable of firing a shot. The Supreme Court went on to state that an operable firearm may be said to be under the control of the alleged actor even though it is "a malfunctioning assembled firearm or a disassembled firearm" so long as the accused has under his control the means to convert the inoperable firearm into an operable firearm. *Layton,* at 499, 307 A.2d at 845. The same Court also stated that an "operable" status could be found if the weapon had a damaged part that was "readily repairable." *Id.*; *accord Commonwealth v. Stevenson,* 894 A.2d 759 (Pa.Super.2006) (Appellant's handgun was operable for purposes of 18 Pa.C.S.A. §§ 6105, 6106; evidence showed that reinsertion of firing pin by hand was all that was needed to test-fire weapon successfully; and handgun was also held operable because means to make it so were readily available to Appellant pursuant to *Layton* and this Court's decision in *Commonwealth v. Siiams,* 260 Pa.Super. 409, 394 A.2d 992, 994 (1978) (construing § 6106)). We see no reason why the reasoning in *Layton* and its progeny should not apply here. Indeed, the state of inoperability was confirmed through the Commonwealth's witness (Agent Adams) during Appellant's co-defendant Prisk's trial, wherein Agent Adams described the condition of the firearm when found under the mattress as missing the firing pin. Further, Agent Adams testified that lab tests confirmed the weapon was not functional, and he (a weapon-carrying police officer) was without knowledge of where to purchase the missing part to allow it to be "readily [ . . . ] converted to expel a projectile;" to-wit:

[Assistant District Attorney:]

Q: And did you—was there a determination in terms of the operation, or ability of the gun?

[Agent Adams:]

A. Yes.

Q. What was the determination?

A. It was determined that the firing pin mechanism was missing off the hammer of the gun.

Q. And I'm not a gun person, Agent Adams. Could you explain what you mean by firing pin? Maybe some of the jurors know, but I don't. What do you mean by firing pin, what exactly, when you reference that?

---

1. *Layton* involved the Uniform Firearms Act, the Act of June 24, 1939, P.L. 872, § 628, as amended 18 P.S. § 4628 (now 18 Pa.C.S.A. § 6105). The pertinent language of the Act, including what is now § 6105, is unchanged, which makes *Layton* instructional in resolving the meaning of "firearm" in the case at bar.

A. A firing pin is a little metal, pointy thing that hits the back of a bullet. And there's a primer there, and it ignites the powder and makes the bullet come out of the gun.

Q. And where is it located on that weapon?

A. On this weapon, it's a fixed firing pin. It would be located on the hammer on the top.

Q. And was it missing or was it broken?

A. It's not there, so it's missing.

Q. How difficult is it to go out and buy a firing pin?

A. I've never bought one.

Q. Okay.

A. I couldn't tell you that.

Q. But you own guns, I take it—

A. Yes.

Q. —obviously, as a police officer.

A. Yes.

Reproduced Record at 98a–99a.

¶ 6 The Majority looks to the definition of "firearm" and notes that it includes any weapon which is "designed" to expel a projectile. Majority Opinion, at 242-43. With this conclusion I do not take issue. However, with the weapon here missing a firing pin, it seems rather incongruous that the manufacturer who "designed" the firearm did so absent a firing pin. Such a state of disassembly, under the particular facts recounted by Agent Adams, I believe renders such an instrument incapable of being "readily" repaired by Appellee so that it would shoot a bullet. I read § 9712.1(e) to require such an expulsion of a projectile for an item to be categorized a "firearm." In other words, absent the capacity to expel a projectile or be readily capable of doing so converts the instrument here into something less than a "firearm" proscribed by § 9712.1 *via* § 9712. *See Layton, supra; cf. Siiams, supra* (tri-

al court granted Appellee's arrest of judgment for violating 18 Pa.C.S.A. § 6106; Commonwealth appealed; we vacated arrest of judgment and reinstated verdict on the basis that, while expert stated that pistol taken from Appellee was "inoperable," expert also explained how he easily made a "repair" so that pistol would shoot a bullet rendering it a "firearm" forbidden to be carried by Appellee under § 6106).

¶ 7 Lastly, to adopt the Majority's position would be the equivalent of incorporating the statutory language set forth in § 9712(a) into § 9712.1. To elaborate, § 9712(a) directs the imposition of a mandatory minimum sentence of five years for any person who possesses a firearm (regardless of whether it is functional) during the commission of a crime of violence, provided possession of the firearm placed the victim in reasonable fear of death or serious bodily injury. Likewise, § 9712.1 contains an identical mandatory minimum sentence of five years imprisonment where a person convicted of violating the Drug Act was in possession of or in close proximity to a firearm. As recited earlier, § 9712.1 also authorizes the incorporation of the meaning of "firearm" outlined in § 9712. However, nowhere is there any mention that the lack of a functional firearm set forth in § 9712(a) should somehow make its way obliquely into § 9712.1 by way of the definitional provision of § 9712(e). *See* Trial court opinion, 7/16/08, at 3–4 ("The Commonwealth is incorrectly encompassing the entire language and legislative intent contained in § 9712, relating to violent crimes, upon § 9712.1, drug-related offenses. The main purpose of § 9712, relating to violent crimes, is the visual possession of a firearm, which places the victim in reasonable fear of death or serious bodily injury. The primary focus of § 9712 is the level of fear the victim experiences during the commis-

sion of a violent crime involving a firearm, hence, § 9712 provision specifically address[es] functionality and the use of firearm replicas. Section 9712.1, drug-related offenses, does not address functionality or even the use of replicas."). In my view, the Majority's ruling achieves such a result by discounting the functionality of a firearm in applying the mandatory minimum sentence under § 9712.1(a). I cannot subscribe to such a decision. *See Dickson, supra* (statute [§ 9712(a) ] imposing mandatory minimum sentence for person possessing firearm during robbery strictly construed to apply only to person carrying gun, not unarmed accomplices or co-conspirator); *see also Commonwealth v. Bigelow,* 484 Pa. 476, 399 A.2d 392, 395 (1979) ("Where one section of a statute contains a given provision, the omission of such provision from a similar (section) is significant [especially where one cross-references the other for definitional purposes] to show a different intention existed."). Accordingly, I respectfully dissent.