**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Adam Terrell STEVENSON, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 21, 2005.

Filed Feb. 28, 2006.

760

Victoria H. Vidt, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: ORIE MELVIN, McCAFFERY, and POPOVICH, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Adam Terrell Stevenson, appeals from the judgment of sentence imposed by the Honorable Kathleen A. Durkin after she convicted Appellant of one count each of aggravated assault,[1] person not to possess a firearm,[2] firearm not to be carried without a license,[3] resisting arrest,[4] and possession of a controlled substance (second offense).[5] Specifically, Appellant asks us to determine whether (1) the trial court abused its discretion by failing to order the sequestration of a police witness; (2) the trial court erred by denying Appellant's motion to suppress;

1. 18 Pa.C.S.A. § 2702(a)(2).

2. 18 Pa.C.S.A. § 6105.

3. 18 Pa.C.S.A. § 6106.

4. 18 Pa.C.S.A. § 5104.

5. 35 P.S. § 780–113(a)(16).

and (3) the evidence was sufficient to support his conviction. Upon review, we affirm.

¶ 2 The relevant facts underlying this appeal, gleaned from the certified record, are as follows. On January 30, 2003, at approximately 1:20 a.m., Appellant and uniformed police officers Ronald Absten and John Prilla were, by coincidence, making purchases inside a convenience store in Pittsburgh. Officer Prilla expressed his belief to Officer Absten that Appellant had a firearm in the right front jacket pocket of his three-quarter-length leather jacket. Officer Absten then made his own assessment, based on Bureau of Alcohol, Tobacco and Firearms ("ATF") training he had received on identifying armed subjects and types of firearms. This training had included means of identifying certain mannerisms characteristic of persons not professionally familiar with carrying handguns. Also, the police officers had been trained to be cognizant of apparently weighted pockets and the visible outline of firearms pressing from inside the pockets. (Notes of Testimony ("N.T."), Suppression Hearing, 1/14/04, at 5–8).

¶ 3 Officer Absten was able to observe the bulging outline of a small handgun in Appellant's right pocket, and further observed that this pocket hung lower than its opposite, revealing that it contained an object of some weight. Officer Absten also noted that once Appellant made eye contact with the officers, he began to frequently look over his shoulders at them while touching his handgun through the outside of the pocket and making related adjustments to his clothing with his right hand. Based on his training and experience, Officer Absten concluded that these actions were mannerisms typical of a male

individual who did not carry a firearm as part of his profession. (*Id.* at 8–9). In light of his prior police experience, these mannerisms and the location of the handgun on Appellant's person, also led Officer Absten to conclude that Appellant might be in possession of an unlicensed or illegal handgun. Officer Absten's experience, upon which he relied, involved several arrests of male individuals who carried illegal firearms in their jackets or pants front pockets. (*Id.* at 11–13).

¶ 4 The officers determined that it would be prudent to question Appellant about what they believed to be his handgun, outside of the establishment instead of within the confines of a small building with other persons present. Accordingly, the officers left the store and waited for Appellant to emerge. (*Id.* at 13). Their intent was to initiate an investigatory detention of Appellant. (N.T., Trial, 4/13/04, at 17.) When Appellant came out of the store, Officer Absten told him to raise his hands or place them on his head, and the officer reached immediately into the pocket to secure the handgun prior to asking questions about it. As Officer Absten took hold of the gun, however, Appellant pushed him away and began to flee. (*Id.* at 46.) Officer Prilla managed to grab Appellant and slow his progress, but Appellant retained possession of the gun, as it had slipped from Officer Absten's grip when Appellant pushed him away. (*Id.* at 47.)

¶ 5 The two officers then wrestled Appellant over the hood of a police car, and he was told repeatedly to stop resisting. Appellant continued the struggle, thrashed about, and tried to reach into his right pocket where he had his handgun. Unable to reach his pocket, Appellant twice "mule-kicked" Officer Absten in the left thigh.[6]

---

**6.** This maneuver involved Appellant thrusting backwards at Officer Absten with his heavy-booted foot. (*Id.* at 47–48.)

The officers were finally able to subdue Appellant after striking him with a blackjack, pepper-spraying his face, and punching him in the face. Once Appellant was subdued, Officer Absten was finally able to extract the blue semiautomatic .32 caliber Beretta handgun which had been in Appellant's pocket. (*Id.* at 48–49.) Officer Absten also recovered from Appellant's person, three "knotted baggy corners" containing a substance that, upon laboratory testing, was revealed to be cocaine. (*Id.* at 49–51.) Once he was placed in the police car following his arrest, Appellant stated to the officers, "You motherfuckers are lucky I didn't get to my gun." (*Id.* at 53.)

¶ 6 Officer Prilla "cleared" Appellant's gun at the arrest scene and discovered that the gun in fact had a live round in the chamber and another round in the magazine. (*Id.* at 23–24). Officer Eric Margolin, who had arrived at the scene, took possession of the gun. (*Id.* at 68.) It was Officer Margolin's responsibility to carry the gun to the police station in order to "package it" for the crime lab. In this instance, this procedure involved unloading the gun and making it safe for transport by opening the slide or barrel so that the gun could not discharge. Officer Margolin removed the slide, and placed the gun, the slide, and the two live rounds which had been recovered from the gun in an envelope, which he signed, taped, sealed, and sent to the crime lab. (*Id.* at 68–70.)

¶ 7 The gun then came into the possession of Deborah Chaklos, a criminologist with the Allegheny County Crime Lab. Ms. Chaklos reassembled, "field-tested,"[7] and then test-fired the gun with one live laboratory round. The gun functioned normally. When Ms. Chaklos' second at-

tempt to test fire the weapon failed, she determined that the firing pin had fallen out. She placed it back into position with her hands, and then was able to successfully test-fire the gun a second time. (*Id.* at 32–33, 40.)

¶ 8 Prior to trial, Appellant moved to suppress the gun seized during the arrest on the grounds that the police had neither reasonable grounds to suspect that criminal activity was afoot nor probable cause for an arrest. At the suppression hearing, Appellant objected to the Commonwealth keeping Officer Prilla at counsel table in order to assist the prosecution, which enabled Officer Prilla to be present during Officer Absten's testimony, and moved to sequester witnesses. Although Judge Durkin granted the motion to sequester, she nevertheless allowed Officer Prilla to remain at the Commonwealth's table during testimony. Officer Prilla did not testify at the suppression hearing. Judge Durkin ultimately denied Appellant's motion to suppress.

¶ 9 Appellant was convicted after a three-day trial at which Officers Prilla, Absten, and Margolin, and Ms. Chaklos all testified. After his judgment of sentence was entered, Appellant filed a timely appeal wherein he raises the following three issues for our review:

1. DID THE TRIAL COURT ERR BY NOT REQUIRING THAT ALL THE WITNESSES, I.E., BOTH POLICE OFFICERS, BE SEQUESTERED AT THE SUPPRESSION HEARING AND AT TRIAL, IN ACCORDANCE WITH THE SEQUESTRATION ORDER?

2. DID THE TRIAL COURT ERR IN FAILING TO GRANT [APPEL-

---

7. Ms. Chaklos testified that field-testing consisted of pulling the trigger without a live round in the chamber in order to make sure that the gun would function normally during test firing. (*Id.* at 32.)

LANT'S] MOTION TO SUPPRESS IN THAT THE POLICE HAD NEITHER A REASONABLE SUSPICION THAT CRIMINAL ACTIVITY WAS AFOOT NOR PROBABLE CAUSE FOR AN ARREST AT THE TIME OF [APPELLANT'S] SEIZURE?

3. IN THE ALTERNATIVE, WAS NOT THE EVIDENCE ADDUCED AT TRIAL INSUFFICIENT TO SUPPORT THE AGGRAVATED ASSAULT, RESISTING ARREST, AND FIREARMS CONVICTIONS?

(Appellant's Brief at 5). We will address these issues *seriatim.*

### A. Motion to Sequester

¶ 10 In his first issue, Appellant argues that the trial court abused its discretion by failing to grant his motion to sequester Officers Prilla and Absten at the suppression hearing and at trial during each other's testimony. Specifically, Appellant contends that since Officers Prilla and Absten were the only two witnesses who testified about the investigatory stop and subsequent arrest, it was "fundamentally unfair" to allow Officer Prilla to be present in court when Officer Absten testified at the suppression hearing, and to allow Officer Absten to be present at trial when Officer Prilla testified. (Appellant's Brief at 11–12).

¶ 11 Preliminarily, as a result of different procedural steps or omissions, we must determine to what extent Appellant has preserved his argument that the trial court abused its discretion by failing to grant his motion to sequester the officers first at the suppression hearing and then at the trial. Any issue not raised in a statement required by Pa.R.A.P. 1925(b) ("1925(b) statement") is deemed waived. *Commonwealth v. Castillo,* 585 Pa. 395, 397–99, 888 A.2d 775, 777 (2005); *Commonwealth v. Lord,* 553 Pa. 415, 420, 719

A.2d 306, 309 (1998). Rule 1925(b) provides that a trial court may enter an order directing the appellant to file a concise statement of matters complained of on appeal, and that failure to comply with this order shall be construed by the appellate court to be a waiver of the issue the appellant seeks to raise on appeal. Further, any issue not raised in the lower court is waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). *See also Commonwealth v. May,* 584 Pa. 640, 654, 887 A.2d 750, 758 (2005) (holding that an objection is waived if it was never put forth at trial); *Commonwealth v. Melendez–Rodriguez,* 856 A.2d 1278, 1287 (Pa.Super.2004) (*en banc*) (holding that absent a contemporaneous objection, an issue is not properly preserved for appeal).

¶ 12 In the case *sub judice,* Appellant did lodge his objection at the suppression hearing to the presence of Officer Prilla at counsel table while Officer Absten testified. (N.T., Suppression, at 3–5). Further, Appellant did raise the issue of the trial court's refusal to sequester Officer Prilla during the suppression hearing in his 1925(b) statement. (Concise Statement of Matters Complained of on Appeal, at ¶ 6(a); Appellant's Brief, Appendix B, at 3). Thus, Appellant has preserved his argument regarding whether the trial court abused its discretion by failing to sequester Officer Prilla during the testimony of Officer Absten at the suppression hearing.

¶ 13 Appellant's argument that the trial court abused its discretion by refusing to sequester the two officers at trial, however, is waived for two reasons. First, Appellant never raised this issue in his 1925(b) statement; rather, Appellant's assignment of error therein pertained only to the trial court's failure to sequester Officer Prilla while Officer Absten testified at the *suppression hearing.* (*Id.*) Second, Appellant failed to raise an objection at trial

regarding the trial court's sequestration ruling during that proceeding.

¶ 14 The following exchange took place at the commencement of the trial:

[Appellant's attorney]: Move to sequester, Your Honor.

[Commonwealth attorney]: Can I have Officer Absten to assist?

The Court: The case officer can stay, and everyone else is sequestered.

(N.T., Trial, at 15). Appellant's attorney raised no objection at this point to the trial court's ruling that Officer Absten could remain at counsel table while Officer Prilla, the Commonwealth's first witness, testified. And, Officer Absten did testify later during the trial. Accordingly, Appellant has waived his argument that the trial court abused its discretion by refusing to sequester the two officers at trial, pursuant to Pa.R.A.P. 1925(b) and 302(a). We will thus address only the issue of whether the trial court abused its discretion by refusing to sequester the officers at the suppression hearing.

■ ¶ 15 This Court's standard of review for a trial court's decision on sequestration of witnesses is abuse of discretion. *Commonwealth v. Atwell,* 785 A.2d 123, 125 (Pa.Super.2001). We will not reverse a trial judge's decision to grant or deny sequestration absent a clear abuse of discretion. *Commonwealth v. Pursell,* 555 Pa. 233, 267, 724 A.2d 293, 310 (1999). Moreover, an appellant must demonstrate that he or she was actually prejudiced by a trial judge's sequestration order before any relief may be warranted. *See id.* at 267–68, 724 A.2d at 310 (holding that an appellant's failure to show prejudice rendered meritless his ineffectiveness claim against counsel who failed to object to the presence of a police witness after trial court ordered a sequestration of witnesses); *Commonwealth v. Albrecht,* 510 Pa. 603, 620, 511 A.2d 764, 773 (1986)

(holding that an appellant's failure to show prejudice rendered meritless his argument that the trial court erred by not sequestering a Commonwealth expert witness). "[A] request for sequestration must be specific and supported by a showing that the interests of justice require it. The purpose of sequestration is to prevent a witness from molding his testimony with that presented by other witnesses." *Commonwealth v. Counterman,* 553 Pa. 370, 399, 719 A.2d 284, 299 (1998) (citation omitted).

¶ 16 Further, Rule 615 of the Pennsylvania Rules of Evidence provides:

At the request of a party or on its own motion, the court may order witnesses sequestered so that they cannot learn of the testimony of other witnesses. This section does not authorize sequestration of the following:

(1) a party who is a natural person or the guardian of a party who is a minor or an incapacitated person;

(2) an officer or employee of a party which is not a natural person (including the Commonwealth) designated as its representative by its attorney; or

(3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

Pa.R.E. 615.

¶ 17 The Comment to Rule 615 explains that the parenthetical phrase relating to "the Commonwealth" in subsection (2) "is meant to make clear that in a criminal case, the prosecution has a right to have the law enforcement agent primarily responsible for investigating the case at the counsel table to assist in presenting the case, even though the agent will be a witness." *Id.,* cmt. (1998).

¶ 18 Turning to the case *sub judice,* Appellant's argument that the trial court

abused its discretion by failing to sequester Officer Prilla during Officer Absten's testimony at the suppression hearing clearly lacks merit. First, the purpose behind the rule permitting sequestration, which is to prevent a witness from molding his or her testimony to the testimony of other witnesses, would not have been served by excluding Officer Prilla from the courtroom during Officer Absten's testimony. *Counterman, supra.* Because Officer Absten was the only Commonwealth witness to testify at the suppression hearing, there was obviously no danger or even opportunity that the non-testifying Officer Prilla would mold or conform his non-existent testimony to that of his fellow officer. In fact, Officer Prilla was not even subject to the sequestration order, as he was not a "witness" at the suppression hearing. Therefore, the trial court could not have abused its discretion by permitting a non-witness to remain in court even after a sequestration motion was granted.

¶ 19 Further, at trial, Appellant stipulated that the testimony from the suppression hearing could be incorporated, and thus additional trial testimony could and did commence from the point where the testimony at the suppression hearing stopped. (N.T., Trial, at 14–15). The testimony at the suppression hearing involved the sequence of events inside the convenience store. At trial, testimony commenced at the point where the officers confronted Appellant after he stepped out of the convenience store. (*Id.* at 17). Thus, Appellant has failed to demonstrate how he was prejudiced in any manner by Judge Durkin's ruling on his sequestration motion.[8] *See Counterman, supra* (holding that where witnesses were not sequestered, failure to show how one witness'

testimony was tailored or molded to another witness' testimony, compels the conclusion that no prejudice or contravention of the interests of justice resulted from denial of sequestration).

¶ 20 Finally, Judge Durkin's ruling that permitted Officer Prilla to remain at counsel table as advisor to the Commonwealth during the suppression hearing is fully in conformance with one of the express purposes of Pa.R.E. 615. For all of the above-stated reasons, Appellant's first argument is without merit.

### B. Motion to Suppress

■ ¶ 21 Appellant next argues that the trial court erred when it denied his motion to suppress the evidence of the handgun. Appellant contends that his encounter with the officers outside of the convenience store, prior to his flight, was the equivalent of an arrest, requiring probable cause. (Appellant's Brief at 8, 16). In the alternative, Appellant contends that he was subject to an investigatory detention, requiring that the officers must have had a reasonable suspicion that criminal activity might be afoot. (*Id.* at 24). Appellant argues that because the evidence at the suppression hearing showed that the officers had neither probable cause for an arrest nor a reasonable suspicion justifying the initial detention, the trial court was obliged to suppress the evidence of the handgun. Appellant contends that he has been deprived of his protections against unreasonable searches and seizures both under Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution. We disagree.

¶ 22 In support of his argument, Appellant asserts that Officer Absten's testimo-

---

8. In fact, Appellant fails to even make a showing in his appellate brief as to how he was

possibly prejudiced by the trial court's ruling.

ny that he had observed the outline of a gun in Appellant's leather jacket pocket was suspect, as the heavy object in that pocket could have easily been, according to Appellant, a number of other things, such as a book, an iPod, a jewelry box, a rock, or even a collection of lead weights picked up from the roadway. (*Id.* at 19). Appellant further contends that even if the officer *had* seen a handgun, this fact alone does not raise a suspicion of illegal activity, as handguns may be legally carried in this Commonwealth. (*Id.*) Also, Appellant asserts that the mannerisms he displayed in the convenience store—his frequent glancing over his shoulder at the officers and touching the pocket where he kept his gun—failed to demonstrate signs of illegal activity. Linked to this argument is Appellant's discussion of authority that purportedly casts doubt on the efficacy and legitimacy of police profiling.[9] (*Id.* at 20–23). Finally, Appellant asserts that other evidence introduced at the suppression hearing regarding his behavior demonstrated nothing of a suspicious character. (*Id.* at 21).

¶ 23 In reviewing these arguments, our standard is as follows:

> [An appellate court's] standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003) (citations omitted).

¶ 24 Under this standard, we must reject Appellant's challenge to the factual findings of the suppression court. Although Appellant argues that the evidence supports only the conclusion that he had an indeterminable heavy object in his pocket, Officer Absten testified unequivocally that he observed the outline of a small handgun in Appellant's pocket. (N.T., Suppression Hearing, at 16). Therefore, the trial court's finding that Officer Absten had reason to believe that Appellant was armed with a gun is supported by direct evidence of record.

¶ 25 Appellant also argues that the evidence concerning his mannerisms does not show that they were of a suspicious nature. Officer Absten testified, however, that based on his training and experience, the mannerisms exhibited by Appellant matched those of an individual who neither carried a weapon as a part of the job nor had experience carrying licensed handguns, and that these mannerisms, as well as the location of the gun upon Appellant's person, indicated that the gun was quite likely unlicensed or illegal. Officer Absten also explained to the court the underpinnings of his conclusions, *i.e.* the facts of his training and experience as a police officer in detecting unlicensed and illegal handguns and apprehending those

9. *See, e.g., Commonwealth v. Jackson*, 428 Pa.Super. 246, 630 A.2d 1231, 1233–34 (1993) (holding that police must introduce into evidence a complete and proven profile in order to rely on a drug courier profile in justifying an investigatory stop of a suspect at an airport, and further stating that the use of drug courier profiles has been criticized because of problems with the accuracy of their predicting criminal activity).

who possessed them. (*Id.* at 8–13). Therefore, the trial court's finding that Officer Absten did have an articulable suspicion that Appellant was engaged in unlawful activity (the possession of an illegal or unlicensed handgun) is likewise fully supported by the record.

¶ 26 Appellant also asserts that he was essentially the victim of a *de facto* criminal profile whose validity had not been established at the hearing. This argument must fail. Officers Absten and Prilla did not single out Appellant from the other patrons at the convenience store because he fit the profile of male individuals who carried illegal and unlicensed handguns. It was Appellant who drew the attention of the officers because: 1) *he was actually carrying a handgun;* 2) the officers *were able to see* the outline of the handgun through Appellant's coat pocket; and 3) Appellant was carrying it in a manner very different from those individuals who carry weapons on the job or who are used to carrying licensed handguns. Therefore, the facts of this case are very different from those in the cases cited by Appellant where individuals who fit certain drug profiles were stopped by the police based on a profile match only, without the police actually having first seen drugs on the person of these individuals.

¶ 27 Appellant also challenges the trial court's finding that when he was first confronted by the officers outside of the convenience store, he was the subject of an investigatory detention, not an arrest. Appellant contends that he was arrested prior to his attempted flight, and therefore the officers were required to have possessed probable cause to make the arrest. Again, we disagree.

¶ 28 There are three levels of recognized interactions between the police and the citizenry:

The first [level of interaction] is the 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.

*Commonwealth v. Bryant,* 866 A.2d 1143, 1146 (Pa.Super.2005), *appeal denied,* 583 Pa. 668, 876 A.2d 392 (2005) (quotation and citation omitted). An encounter becomes an arrest when, under the totality of the circumstances, a police detention becomes so coercive that it functions as an arrest. *Commonwealth v. Revere,* 814 A.2d 197, 200 (Pa.Super.2002), *aff'd on other grounds* 585 Pa. 262, 888 A.2d 694 (2005). The numerous factors used to determine whether a detention has become an arrest are the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel suspicions. *Id.*

¶ 29 Here, Officers Absten and Prilla approached Appellant outside of the convenience store and told him to raise his hands or place them on his head while Officer Absten attempted to secure the gun which he had observed outlined in Appellant's pocket. Appellant was not placed in custody or put into restraints; the detention occurred at a commercial establishment serving the public not at a police station; the officers did not display their weapons or use or threaten force; and no evidence suggested that the police

intended to transport Appellant against his will. Moreover, Officer Absten testified that his intention in detaining Appellant was to ascertain whether he had a permit to carry a concealed handgun. (N.T., Suppression Hearing, at 21). Under these facts, it was not error for the trial court to conclude that Appellant was the subject of an investigatory stop, not an arrest, prior to his attempted flight and subsequent detention. The issue therefore becomes whether the officers had a reasonable suspicion to detain Appellant to investigate whether the handgun he possessed was lawfully held and concealed.

¶ 30 Our determination as to whether the officers had reasonable suspicion to stop Appellant is informed by the following principles:

> Our inquiry is a dual one—whether the officers' action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot. The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

*Commonwealth v. Zhahir*, 561 Pa. 545, 552, 751 A.2d 1153, 1156–1157 (2000) (citations and quotations omitted). An individual's suspicious and furtive behavior that,

in the opinion of an experienced police officer under certain circumstances, indicates criminal activity, reasonably justifies an investigative detention. *Id.* at 553–54, 751 A.2d at 1157.

¶ 31 Further, the delicate balance between protecting the right of citizens to be free from unreasonable searches and seizures, on the one hand, and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime, on the other hand, requires additional considerations when the police have a reasonable suspicion that a person may be armed. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized the importance of these competing governmental interests, particularly where the safety of police officers is concerned. The Court stated:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.
>
> *In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an offi-*

cer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Id.* at 23–24, 88 S.Ct. 1868 (footnote omitted) (emphasis added). Our Supreme Court has long recognized this interest as well. *See Commonwealth v. Hicks*, 434 Pa. 153, 158–159, 253 A.2d 276, 279 (1969) (adopting the *Terry* test and reasoning). Further, the safety concerns of police and other citizens are of a continuing nature, given the sober truth that "many of our streets are [now] infinitely more dangerous for citizens and police officers alike than they were in 1968 when the U.S. Supreme Court decided *Terry* and in 1969 when our Supreme Court decided *Hicks*." *Commonwealth v. Blair*, 860 A.2d 567, 572 (Pa.Super.2004).

¶ 32 Thus, under *Terry, Hicks,* and related authority, a police officer may frisk an individual during an investigatory detention when the officer believes, based on specific and articulable facts, that the individual is armed and dangerous. *Commonwealth v. Robinson,* 410 Pa.Super. 614, 600 A.2d 957, 959 (1991). When assessing the reasonableness of an officer's decision to frisk a suspect during an investigatory detention, an appellate court does "not consider [the officer's] 'unparticularized suspicion or "hunch," but [rather] . . . the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.' " *Zhahir, supra* at 554, 751 A.2d at 1158 (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). Further, the court must be guided by common sense concerns that

*give preference to the safety of the police officer* during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon. *Id.* at 555, 751 A.2d at 1158.

¶ 33 In *Robinson, supra,* a police officer witnessed a person bending into a van in a populated area. The individual's posture revealed that he had a handgun stuck in the back of his shorts. The officer and her partner stopped the individual and frisked him, and their investigatory stop revealed a handgun with its serial number obliterated. In holding that the officers' conduct was appropriate, we observed:

[P]ossession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed. In the present case, [the police officer] was acting upon a reasonable suspicion based upon her personal observation of the weapon in combination with her concern with the presence of children in the area. The need to conduct an investigatory detention under the present facts clearly outweighs any harm which the stop and frisk entails.

*Robinson, supra* at 959–60. Thus, in light of the above authority, we emphasize that police safety, and the safety of other citizens, must always be afforded **great weight** when balanced against the privacy rights of an individual during an investigatory detention and pat down or frisk for weapons when the police have a reasonable suspicion that an individual is armed.

¶ 34 Turning to the case *sub judice,* there can be no doubt, under the above precedent, that Officers Absten and Prilla had reasonable justification to stop Appellant and take hold of his weapon. The

Commonwealth's evidence, which we must consider as credible in this appeal,[10] establishes that the officers observed that Appellant possessed a concealed weapon; that Appellant acted suspiciously and in a manner that suggested that his weapon may be illegal or unlicensed; that Appellant carried his weapon in a location on his person that, in Officer Absten's experience, indicated that the weapon may be illegal or unlicensed; and that Officer Absten had the requisite training and experience to make the necessary assessments as to whether Appellant was carrying an illegal or unlicensed weapon. The totality of these circumstances wholly support the trial court's conclusion that the officers had a reasonable suspicion that Appellant may have been engaged in criminal activity. Moreover, because the officers had a reasonable suspicion that Appellant was concealing an illegal or unlicensed handgun, Officer Absten's direction that Appellant place his hands on his head and the officer's attempt to secure the weapon constituted only a limited intrusion upon Appellant's privacy rights, as balanced against the significant needs of Officer Absten to insure his own safety and that of his partner and any bystanders. To hold otherwise under these circumstances would *do violence to the well-considered reasoning of Terry, Zhahir, Robinson,* and analogous cases.

¶ 35 To recapitulate, the trial court's factual findings court upon which it relied in denying Appellant's suppression motion are all supported by evidence of record. These findings establish that, prior to his flight, Appellant was the subject of an investigatory detention, not an arrest. Officers Absten and Prilla were justified under the circumstances to conduct an investigatory detention of Appellant. Further, Officer Absten was justified, under the

circumstances, in directing Appellant to place his hands on his head and in reaching for the concealed weapon that the officer had seen. Accordingly, the trial court did not err by denying Appellant's motion to suppress the handgun.

### C. Sufficiency of the Evidence

 ¶ 36 Finally, Appellant argues that the evidence introduced at trial was insufficient to support his convictions for aggravated assault, resisting arrest, and firearms violations. Our standard when reviewing the sufficiency of the evidence, is "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." *May,* 887 A.2d at 753 (citation omitted). We may not weigh the evidence or substitute our judgment for that of the fact-finder. *Commonwealth v. Smith,* 863 A.2d 1172, 1176 (Pa.Super.2004). Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no facts supporting a finding of guilt may be drawn. *Id.* The fact-finder, when evaluating the credibility and weight of the evidence, is free to believe all, part, or none of the evidence. *Id.* For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced. *Id.*

 ¶ 37 Appellant first contends that his aggravated assault conviction must be reversed because no evidence was offered to show that he attempted to cause, or intentionally, knowingly, or recklessly caused, serious bodily injury to any of the

10. *Bomar, supra* at 445, 826 A.2d at 842.

arresting officers. Appellant argues that the evidence shows, at worst, that he "mule-kicked" Officer Absten in the thigh, causing nothing more than several days of soreness, and that he told the officers that they were lucky he did not grab hold of his gun. With respect to his statement, Appellant asserts that his words did not cause serious bodily injury and that they were spoken at a time when he was secured by the officers and thus unable to harm them. (Appellant's Brief at 30). This argument is specious and entirely without merit.

¶ 38 Appellant was convicted of violating 18 Pa.C.S.A. § 2702(a)(2), which section provides that an individual is guilty of aggravated assault if he or she "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers ... or other persons enumerated in subsection (c) ... while in performance of duty." Section 2702(c) includes "police officers" among the "officers ... and other persons" covered under Section 2702(a)(2). Further, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

¶ 39 To sustain a conviction for aggravated assault, the Commonwealth need not show that serious bodily injury actually occurred, but only that the defendant attempted to cause serious bodily injury to another person. *Commonwealth v. Galindes*, 786 A.2d 1004, 1012 (Pa.Super.2001). An "attempt" exists when "the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetuating serious bodily injury upon another." *Id.* (citation and quotation omitted).

¶ 40 Applying these definitions to the evidence of record, we must reject Appellant's argument that the evidence was insufficient to sustain his conviction for aggravated assault. First, we note that Appellant's argument incorrectly focuses upon whether any of the arresting officers actually sustained serious bodily injury during the struggle to arrest Appellant. The evidence need only show that Appellant **attempted** to inflict serious bodily injury upon the officers. Here, the evidence shows that during his struggle with the officers, Appellant **attempted** to reach into his pocket where he had a loaded handgun. (N.T., Trial, at 47). Indeed, after his arrest, Appellant advised the officers that they were "lucky [he] didn't get to [his] gun." (*Id.* at 53). The trial court specifically credited this evidence in support of the conviction for aggravated assault. (Trial Court Opinion at 3). Therefore, the totality of the evidence does show that Appellant, by attempting to take hold of his handgun during the arrest struggle, took a significant and substantial step towards inflicting serious bodily injuries upon the officers. *See Galindes, supra* (concluding that the firing of a weapon constitutes the type of conduct likely to result in serious bodily injury).

¶ 41 Further, Appellant's "mule-kicking" of Officer Absten also constituted a significant and substantial step towards inflicting serious bodily. During the struggle, Appellant thrust backward with his booted foot at Officer Absten, twice striking him in the left thigh. (N.T., Trial, at 48). Although Officer Absten fortunately experienced nothing more than pain and bruising as the result of this assault, had Appellant struck Officer Absten in the knee, an organ, or a more sensitive part of his body, Officer Absten could well have suffered serious, permanent disfigurement, or protracted loss or impairment of the

function of a bodily member or organ. Appellant's vicious attempt to incapacitate Officer Absten so that Appellant might reach his gun or continue his flight cannot be cavalierly dismissed on the grounds that it failed to achieve its purpose. The evidence is plainly sufficient to support Appellant's aggravated assault conviction.

¶ 42 Appellant next argues that the evidence was insufficient to support his resisting arrest conviction. The offense of resisting arrest is established when a "person ... with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, ... creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104. In order for a person to be guilty of resisting arrest, there must first have been a *lawful* arrest. *Commonwealth v. Biagini,* 540 Pa. 22, 32, 655 A.2d 492, 497 (1995). The facts of the case must therefore support the legal conclusion that the arresting officer acted with authority and probable cause. *Id.*

¶ 43 Appellant restates his argument that Officers Absten and Prilla lacked probable cause to arrest him as he emerged from the convenience store. As we determined earlier, however, Officers Absten and Prilla had reasonable suspicion to make an investigatory stop. When the officers stopped Appellant, he pushed one officer away and attempted to flee, all the while in possession of a handgun. At that point, the officers had probable cause to make an arrest. Appellant resisted apprehension, however, and during the course of the struggle, attempted to grab his handgun and. twice violently and forcefully

"mule-kicked" Officer Absten. The simple recitation of these facts establishes that the evidence was sufficient to support Appellant's conviction for resisting arrest.[11] *See Commonwealth v. Lyons,* 382 Pa.Super. 438, 555 A.2d 920, 925 (1989) (holding that the evidence supported a conviction for resisting arrest with the finding that a substantial risk of bodily injury was present when the defendant, who had no weapon, fled from the police into a slippery and frigid creek, and where once apprehended, he kicked and struggled with the officers).

¶ 44 Finally, Appellant argues that the evidence was insufficient to support his firearms convictions for violations of 18 Pa.C.S.A. §§ 6105(a)(1) and (b), and 6106. In order to sustain convictions under these sections, the firearm in question must have been operable or capable of being converted into an object that could fire a shot. *Commonwealth v. Layton,* 452 Pa. 495, 498, 307 A.2d 843, 844 (1973) (construing Section 6105); *Commonwealth v. Berta,* 356 Pa.Super. 403, 514 A.2d 921, 924–25 (1986) (construing Section 6106); *Commonwealth v. Siiams,* 260 Pa.Super. 409, 394 A.2d 992, 994 (1978) (construing Section 6106).

¶ 45 Appellant argues that because the firing pin of his weapon fell out during test-firing, it was inoperable for purposes of Sections 6105 and 6106. Appellant, however, ignores the evidence that the handgun also did function normally during both a field test and initial test-firing. It was only later, following the handgun's normal operation, that the firing pin fell out. The firing pin was then placed back into position by hand, and the gun regained its normal operability with a successful second test-firing. (N.T., Trial, at

11. In fact, Appellant's trial attorney admitted that the Commonwealth established the element of substantial risk of bodily injury during Appellant's attempted flight and struggle with the officers who were attempting to apprehend him. (N.T., Trial, at 22).

32–33, 40). Moreover, testimony at trial established that the gun would have been inoperable only if the firing pin, or another major component of the gun's mechanism, was *missing*. (*Id.* at 37).

¶ 46 In *Layton*, our Supreme Court observed:

[Now Section 6105] specifically states that a violation takes place if the firearm is under the control of the alleged actor. An operable firearm may be said to be under the control of the alleged actor even though it is a malfunctioning assembled firearm or a disassembled firearm, if the alleged actor has under his control the means to convert the inoperable firearm into an operable firearm. For example, a reasonable fact finder might conclude, under all of the circumstances that an operable firearm was under the control of the actor even though the stock, barrel, trigger housing group, or firing mechanism were in different rooms in the same apartment or might infer control if a damaged part were readily repairable. If it can reasonably be concluded that the actor owned, possessed or *controlled* an operable firearm, there is a risk of violence by the firing of a shot[,] which was the result sought to be avoided by [now Section 6105].

*Id.* at 498–99, 307 A.2d at 845 (emphasis in the original; citations omitted). *See also Siiams, supra* at 994–95 (holding that a handgun was operable for purposes of conviction under Section 6106 when it was test-fired by holding the barrel pivot pin against the grip pin with a pair of pliers).

¶ 47 Instantly, Appellant's handgun was clearly operable for purposes of Sections 6105 and 6106. The evidence showed that it functioned normally during both a field test and the initial test-firing, making obvious its capability of firing a shot. Moreover, the reinsertion of the firing pin by

hand was all that was needed to successfully test-fire the weapon a second time. Because the handgun was operable, and because the means to make the handgun operable again, after a slight malfunction, were readily available to Appellant, the weapon was "operable" pursuant to the Supreme Court's analysis in *Layton* and this Court's analysis in *Siiams*. Accordingly, the evidence introduced at trial was sufficient to convict Appellant of violations of Sections 6105 and 6106.

¶ 48 Based on all of the foregoing facts and our analysis of caselaw, we hold that the trial court neither abused its discretion nor erred in denying sequestration of a police witness and the motion to suppress. We further determine that the evidence was sufficient to support Appellant's convictions. Accordingly, Appellant's judgment of sentence is affirmed.

¶ 49 Judgment affirmed.