J-S34016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CORLIVEETHO MCMILLIAN | |
| Appellant | No. 1716 MDA 2014 |

Appeal from the Judgment of Sentence September 11, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0001375-2012

BEFORE:  BOWES, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                                    **FILED JULY 29, 2015**

Corliveetho McMillan brings this appeal from the judgment of sentence imposed on September 11, 2014, in the Court of Common Pleas of Luzerne County.  A jury convicted McMillan of one count of aggravated assault.[1]  The trial court imposed a sentence of five to ten years' imprisonment. Contemporaneous with this appeal, McMillan's counsel has filed a petition to withdraw from representation and an **Anders** brief. **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). The **Anders** brief identifies one issue, a challenge to the sufficiency of the evidence. For the reasons that follow, we affirm the judgment of sentence and grant counsel's petition to withdraw.

_____

[1] 18 Pa.C.S. § 2702(a)(2).

This case arose at State Correctional Institution (SCI) – Dallas, where McMillan was an inmate. Corrections Officer Kevin Nahill testified that on March 14, 2011, he was working on India Block or I-Block. At approximately 8:40 a.m., McMillan started to go upstairs to the second level of the block for cleaning supplies. Nahill told him to wait until 9:00 a.m., when an officer would be upstairs because the mop closet door was locked. McMillan, who was half-way up the stairs, came back down and went into the dayroom. Ten minutes later, Lucille Singer came on the block to pick up outgoing mail. Nahill walked over to the mailbox with her. Nahill testified at that time he was attacked from behind, stabbed in the neck, and punched in the face. Nahill turned around and grabbed McMillan and both went to the ground. Nahill testified McMillan told him he would kill him. Within seconds, other corrections officers arrived. When Nahill got up, there was a pen laying on the ground, and another officer told Nahill the pen had been used to stab him. Nahill realized he was bleeding and walked directly to the infirmary. The nurses performed first aid on Nahill's neck and called 911 for an ambulance. Nahill was transported to the hospital where he was diagnosed with a puncture wound to the neck, a concussion, and a swollen left eye. He was treated at the hospital and released. *See* N.T., 7/7/2014, at 31–49.

Singer testified that in March, 2011, she was employed at SCI-Dallas as a mail room inspector, and her duties included processing and delivering mail to inmates. She testified she was picking up mail on the block, accompanied by a corrections officer as an escort and an inmate with a cart.

When she went onto the block, the corrections officer remained in the hallway and Nahill came out of the office to escort her. When she was with Nahill, an inmate came up and grabbed Nahill. As they wrestled, she went looking for other corrections officers. When officers arrived, Nahill and the inmate were on the ground wrestling. Singer did not see the inmate's face. Singer did not see anything in the inmate's hand, but she saw his hand in a fist against Nahill's neck. *See* N.T., 7/7/2014, at 67–71.

Corrections Officer Christopher Hashagen testified that, on March 14, 2011, he was working at SCI-Dallas on the 6 a.m. to 2 p.m. shift. He was assigned to I-Block that day. At approximately 8:40 a.m., he was behind the desk in front of the office, when he saw a flash out of the corner of his eye. He saw McMillan coming out of the dayroom, and go up to Nahill and strike him on the side of the neck. Hashagen did not see a pen at the time, but he saw McMillan's hand hit the side of Nahill's neck, and saw McMillan punch Nahill. He saw a pen laying on the floor after the incident. He used the emergency phone and then ran to help another corrections officer, Officer Maute, who was Singer's escort. *See* N.T., 7/7/2014, at 83–91.

Joyce Ann Wilson, a registered nurse, who was working in the SCI-Dallas infirmary on March 14, 2011, testified she was alerted to an altercation and she watched Nahill walk down the hallway to the infirmary. Nahill told her he had been stabbed in the neck. She noticed a puncture wound to the right side of his neck. She controlled the bleeding and called 911 because she could not determine the depth of the wound. She stated

she called 911 before she started to evaluate Nahill. She testified "with the location of the puncture wound on the neck, there's the carotid artery and the jugular vein … airway, trachea, the esophagus, and his spinal cord."[2] *See* N.T., 7/7/2014, at 140–144, 150. Her written report regarding Nahill noted the puncture wound to the right side of the neck — approximately ½ inch in length with questionable depth; superficial laceration to the posterior of the neck, measuring 4½ inches; right thumb laceration of 1 inch in length; left eye was red; complaint of a headache, with his neck being stiff; swelling around the left side of his head, and complaint of blurred vison to the left eye. *See* N.T., 7/7/2014, at 145–149. The bridge of his nose was edematous; a neurovascular check was within normal limits, and he had scratches to the left side of his back. *Id.* at 149.

McMillan testified in his own defense. McMillan testified that when he was transferred to I-Block for medical purposes after receiving a pacemaker, Nahill harassed him and McMillan started writing complaints. McMillan stated Nahill was intimidating him. On March 14, 2011, at 8:30 a.m., McMillan asked to get cleaning supplies, and Nahill told him he had to wait until 9:00 am. He went to the dayroom for 25 minutes, and then approached Hashagen to ask to be moved off I-Block immediately. Hashagen made a phone call and then told McMillan that the unit manager

---

[2] N.T., 7/7/2014, at 143.

would not speak to him. McMillan then got a request slip that would go to the unit manager and started writing a request to be moved off the block. Nahill was upstairs looking down. He saw the exchange and told McMillan the only way off the block was lockup. Nahill then came down the stairwell, and while McMillan was writing the request, Nahill hit him on the arm, and spun him around. McMillan stated his pen caught Nahill in the neck, and then Nahill grabbed him and they fell to the ground. McMillan testified it was not his intent to cause injury to Nahill. *See* N.T., 7/7/2014, at 168–186.

Two inmates testified for the defense. Richard Vanholt testified that he was an inmate at SCI-Dallas in March, 2011, and Lieutenant Moser, who is in charge of the Restricted Housing Unit, told him and his cellmate that if he knew anything about the incident it would be best for them to keep it to themselves. Jamel Brockington testified similarly. *See* N.T., 7/7/2014, at 214–218, 221–223.

McMillan's sister, Doris Fayedene McMillan, and McMillan's mother, Doris McMillan, also testified for McMillan. McMillan's sister testified that McMillan told her he was having trouble with some guards, in particular, Nahill. McMillan's sister testified McMillan had her call the Human Rights Coalition. On many occasions, McMillan told her Nahill was harassing him. She said she received a phone call from an inmate's mother telling her McMillan was being beaten up, and she should go to the prison to find out what was happening. McMillan's mother testified that when McMillan called

her he would tell her about Nahill and harassment, and he told her was in fear of his life. **See** N.T., 7/7/2014, at 232–239, 242–246.

At the close of the trial,[3] the jury found McMillan guilty of one count of aggravated assault. After sentencing, this appeal timely followed.[4]

When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

> Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349, 361 (Pa. 2009). The brief must:
>
> (1)  provide a summary of the procedural history and facts, with citations to the record;
> (2)  refer to anything in the record that counsel believes arguably supports the appeal;
> (3)  set forth counsel's conclusion that the appeal is frivolous; and
> (4)  state counsel's reasons for concluding that the appeal is frivolous.

---

[3] The Commonwealth also presented the testimony of Eric Noss, a corrections officer, and Captain John Martin, a lieutenant in the security office in 2011, in its case in chief. The defense also called Christopher Wilson, the trooper assigned to investigate the case. The Commonwealth re-called Wilson as a rebuttal witness.

[4] In response to the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, counsel advised the court he would be filing an **Anders** brief. **See** Pa.R.A.P. 1925(c)(4).

> Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous. ***Santiago***, 978 A.2d at 361. Counsel also must provide a copy of the ***Anders*** brief to the appellant. Attending the brief must be a letter that advises the appellant of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Nischan***, 2007 PA Super 199, 928 A.2d 349, 353 (Pa. Super. 2007); ***see Commonwealth v. Daniels***, 2010 PA Super 112, 999 A.2d 590, 594 (Pa. Super. 2010); ***Commonwealth v. Millisock***, 2005 PA Super 147, 873 A.2d 748, 751-52 (Pa. Super. 2005).

***Commonwealth v. Harden***, 103 A.3d 107, 110 (Pa. Super. 2014).

Here, our review of the record reveals counsel has complied with the requirements for withdrawal. Specifically, counsel filed a petition for leave to withdraw, in which she states her belief that the appeal is frivolous, and filed an ***Anders*** brief pursuant to the dictates of ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). Counsel has provided a copy of the letter she mailed to McMillan, advising him of his right to retain new counsel or proceed *pro se*, and the letter to McMillan reflects counsel's enclosure of a copy of the ***Anders*** brief. Moreover, our review of the record reveals no response from McMillan. Accordingly, we now must conduct an independent review of the record to determine whether the issue identified in this appeal is, as counsel states, wholly frivolous.

As stated above, the issue identified by the ***Anders*** brief is a sufficiency challenge. A claim challenging the sufficiency of the evidence is a question of law. ***Commonwealth v. Widmer***, 744 A.2d 745 (Pa. 2000). In

**Widmer**, our Supreme Court set forth the sufficiency of the evidence standard:

> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. **Commonwealth v. Karkaria**, 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. **Commonwealth v. Santana**, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. **Commonwealth v. Chambers**, 528 Pa. 558, 599 A.2d 630 (1991).

**Id**. at 751. Furthermore,

> [w]e may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no facts supporting a finding of guilt may be drawn. The fact-finder, when evaluating the credibility and weight of the evidence, is free to believe all, part, or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

**Commonwealth v. Stevenson**, 894 A.2d 759, 773 (Pa. Super. 2006) (citations omitted), *appeal denied*, 917 A.2d 846 (Pa. 2007).

McMillan was convicted of aggravated assault, which is defined as follows:

> A person is guilty of aggravated assault if he … attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other

persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty.

18 Pa.C.S. § 2702(a)(2). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Section 2702(c) specifically identifies an "officer or employee of a correctional institution, county jail or prison" as among the "officers, agents, employees or other persons" referenced in section 2702(a). 18 Pa.C.S. § 2702(c)(9).

The Commonwealth, in sustaining an aggravated assault conviction, "need only show the defendant attempted to cause serious bodily injury to another, not that serious bodily injury actually occurred." ***Commonwealth v. Galindes***, 786 A.2d 1004, 1012 (Pa. Super. 2001) (footnote and citations omitted), *appeal denied*, 803 A.2d 733 (2002). An "attempt" exists when "the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetuating serious bodily injury upon another." ***Id.*** (quotations and citation omitted). "The Commonwealth can establish specific intent from the circumstances surrounding the incident." ***Id.*** (citation omitted).

The evidence presented by the Commonwealth at trial demonstrated that McMillan's actions satisfied the requisite elements of aggravated assault. The Commonwealth presented evidence that McMillan attacked Nahill from behind, and that he struck him in the side of the neck and

punched him. In the struggle that ensued, both McMillan and Nahill went to the ground, and Nahill testified McMillan threatened his life. After Nahill got up, a pen was found lying on the ground. At the SCI-Dallas infirmary, Nahill was found to have a puncture wound to the right side of his neck. The nurse who treated Nahill activated 911. She explained it was an emergency situation because she could not determine the depth of the wound, and due to the location of the puncture wound and the carotid artery, jugular vein, airway, trachea, esophagus, and spinal column.

McMillan offered a different version of the events, and claimed that he did not intend to cause harm to Nahill. He presented witnesses who testified that McMillan told them he was being harassed by the corrections officers. He also presented two fellow inmates who testified they were told to keep any information they had about McMillan and Nahill to themselves. The jury was free to reject this evidence. *See Stevenson, supra*.

Given our standard of review that requires this Court to view the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude the Commonwealth's evidence and the testimony of its witnesses, which was believed by the jury, is sufficient to sustain the conviction for aggravated assault. *See Widmer, supra*; 18 Pa.C.S. 2702(a)(2). As such, a challenge to the sufficiency of the evidence would ultimately be frivolous.

Furthermore, we detect no other issues that would sustain an appeal in this case. *See Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa.

Super. 2015) ("[T]his Court must conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." (citation and footnote omitted)). Therefore, the appeal is wholly frivolous. Accordingly, we affirm McMillan's judgment of sentence and grant counsel's petition for leave to withdraw as counsel.

Judgment of sentence affirmed. Petition for leave to withdraw as counsel granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/2015